## Hoffman, Appellant, v. Burke.

652

Argued June 1, 1954. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Leon Ehrlich,* with him *M. Bernard Hoffman,* for appellant.

*Edward Youngerman,* Assistant District Attorney, with him *Henry M. Koch,* District Attorney, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, September 27, 1954:

On June 8, 1942, pursuant to a plea of guilty, entered in open court, the relator, Jacob L. Hoffman, was adjudged guilty of murder in the first degree and was sentenced to life imprisonment in Eastern State Penitentiary. It was not until October 8, 1952, more than ten years later, that the relator questioned the validity of the sentence imposed. He then filed a petition for a writ of habeas corpus in the Court of Com-

mon Pleas of Berks County alleging that he was illegally detained. A rule to show cause why the writ should not issue was granted and answers were filed by the District Attorney of Berks County and the warden of the Eastern State Penitentiary. After oral argument on the petition and the answers thereto, the court made an order discharging the rule and dismissing the petition. Relator has appealed from that order.

The only issue presented is whether the court below erred in refusing to grant a hearing on the petition for a writ of habeas corpus after issuing a rule to show cause. Under the Habeas Corpus Act of May 25, 1951, P. L. 415, 12 PS §1901 et seq., where a rule to show cause is allowed, the taking of testimony is not necessary where there is no issue of fact to be decided or when the facts averred by the relator, even if believed, are insufficient to warrant granting the writ. If the petition, answer and original record disclose only questions of law, then in this as in any other civil proceeding, the only hearing necessary is oral argument to hear the relator's views on the legal issues involved: *Commonwealth ex rel. Bishop v. Claudy,* 373 Pa. 523, 97 A. 2d 54.

In his petition the appellant alleged that at the time of the proceeding, as a result of which he is detained, he was not competent to plead. In support of this averment he set forth and relied on a statement attributed to one of the two hearing judges in the original proceeding (Judge MAYS) that "We have a report that this man is a borderline case of psychosis, he doesn't know the difference between right and wrong; and the doctors recommend, and I certainly feel for myself that it is a fine recommendation, that this man be committed to an institution where he will receive medical attention.". The record discloses that

after the relator pleaded guilty the court held a hearing to determine the degree of guilt. Although the relator was represented then and throughout the entire proceeding by competent counsel, at no time was the defense of insanity raised. The court on its own initiative before passing sentence, had the defendant undergo an examination by Dr. Paul Holmer, a psychiatrist. The psychiatrist's report, along with other testimony, was considered by the judges in determining whether punishment should be fixed at death or life imprisonment.

When reference is made to the medical report, it becomes apparent that Judge MAYS' statement, if correctly reported, must have been inadvertently made. Although the psychiatrist says therein that relator must be considered a border-line case of psychosis because of serious character and personality disorders, he definitely states that ". . . by themselves, [these disorders] would not indicate a diagnosis of definite insanity from a strictly legal point of view. *He does know the difference* between *right and wrong.* He knows that to kill somebody is wrong.". (Emphasis supplied). It is of utmost significance that Judge MAYS, ten years later, writing for the court en banc the opinion rendered in support of the order discharging the rule, refers to the report and quotes this very language. He goes on to say that "True it is that the doctor did then state that he may need treatment in a mental hospital. It was this that prompted one of the sitting judges to put upon the record this very thing, so that if it should be found that he was actually insane, he could then be committed to Farview State Hospital. Manifestly, he has not arrived at such a stage. Otherwise, the authorities surely would have had him transferred. What was said by the doctor was a factor which it was our right to, and which

we did so do, take into consideration in determining and fixing the sentence.".

The relator's contention that a hearing should have been had on the rule issued rests on the assertion that he was not "competent to plead", and this in turn rests solely upon the statement recorded as having been made by the trial judge. The written report of the psychiatrist clearly establishes that the statement attributed to the trial judge, if accurately recorded, was patently incorrect.

Following the defendant's plea of guilty, the inquiry (two judges sitting) for determination of the degree of guilt and the sentence to be imposed, which covers about 50 typewritten pages of the record, includes an interrogation of the defendant by the court, in the presence of his counsel, during which he expressly admitted that he knew that what he did was wrong. Defendant had strangled his common law wife, and was fortunate to escape the extreme penalty. From the court's opinion it appears that in imposing the sentence of life imprisonment instead of death, the court mercifully took into consideration the psychiatrist's report that although not insane, the defendant was mentally abnormal or subnormal.

It is not contended that relator is presently insane, and in his petition for the writ (to which his personal affidavit is attached) there is no averment that he was insane at the time of his plea or when the crime was committed. The bald averment that "he was not competent to plead" is based solely on the trial judge's misstatement of the psychiatrist's report. To avoid the conclusiveness of the report in this regard, counsel for relator claims that resort thereto may not be had because, although used by the court at the time sentence was imposed and quoted from in its opinion, it was not formally made a part of the record. At our

656

request counsel furnished us a copy of the report, admittedly a true and correct copy. We cannot countenance this technical avoidance of the truth. The physician's report which we have carefully examined conclusively disposes of the basis for relator's contention that he is illegally detained.

We are of the opinion that the relator was properly sentenced and to afford him another hearing under the circumstances at this late day would be trifling with the due administration of justice to which the Commonwealth as well as the defendant is entitled.

The order dismissing the petition for the writ of habeas corpus is affirmed.

Mr. Justice MUSMANNO dissents.