## Commonwealth ex rel. Edwards, Appellant, *v.* Myers.

Submitted October 5, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, BOK, EAGEN and ALPERN, JJ.

*Harry Edwards,* appellant, in propria persona.

*Louis F. McCabe* and *Arlen Specter,* Assistant District Attorneys, *Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 14, 1961:

On January 27, 1957, Harry Edwards, the appellant in this case, was arrested by the police of Philadelphia and charged with armed robbery. Shortly thereafter he conferred with a reputable attorney at the bar, Joseph Skale, who on February 8, 1957 withdrew his appearance. On March 14, 1957, an appearance in behalf of Edwards was entered by H. Pollock as Voluntary Defender. On July 10, 1957, Mr. Pollock withdrew as defense counsel.

On July 23, 1957, Edwards' case was called for trial and in open court the following colloquy took place between the defendant and the trial assistant district attorney, Alfred P. Filippone: "MR. FILIPPONE: I have just talked with the defendant and he is not represented by anyone in this case, your Honor. It has been listed seven times, according to the sheet, and the last time it was continued because he had no attorney. I spoke to him today and he said he wants to get the case over with and he wants to go on without his attorney. BY MR. FILIPPONE: (To Defendant) Q. Is that right, Mr. Edwards? A. Yes, sir. THE COURT: Does he want a jury trial? MR. FILIPPONE: He said he wanted your Honor to decide the case. Q. Is that right? A. Yes.

THE COURT: All right. (The defendant having been arraigned pleads not guilty and waives jury trial.)"

Later on Mr. Filippone verified that this colloquy had been duly recorded by the court reporter.

The first witness in the trial, Leon A. Kligman, identified the defendant as the man who had robbed him. After he testified, the trial court said to the defendant: "You are entitled to ask him anything you want to now in your cross-examination. You can question him, if you wish." The defendant replied: "I have nothing to ask him, sir."

The next witness was the arresting officer. The defendant asked him several questions in cross-examination.

Then a Frank Craddock testified to circumstances highly incriminatory of the defendant. The defendant cross-examined him.

At the termination of the Commonwealth's case, the court addressed the defendant: "Now, Edwards, you can call any witnesses to testify for you or you can testify yourself, if you wish. Do you want to call any witnesses?"

The defendant said he would like to have Detective Zeitman testify. Zeitman took the stand and the defendant put several questions to him. The defendant himself then took the stand. His defense was an alibi. He stated that he was in a barroom at the time the robbery occurred and mentioned the names of two persons who could substantiate his alibi. Mr. Filippone asked him if he would like to have these persons called as witnesses. Edwards replied: ". . . I would rather go on and be tried and get it all over with, I mean, it's a strain on me, and so forth; I would rather be tried and get it over with."

Later on he changed his views in this respect and said: "Well, if you can get them in here tomorrow that will be all right, sir."

Mr. Filippone at this juncture addressed a query to an attorney Sprague who, it appears, had been a Voluntary Defender for the defendant, asking him if he had the names and addresses of persons who would testify in the defendant's behalf. Mr. Sprague suggested that whatever information Edwards had imparted to him was in the nature of a privileged communication. The attorney apparently feared that the witnesses being mentioned might not help the defendant. Mr. Filippone then asked Edwards if he wanted the witnesses to be summoned. The defendant replied: "Judge, your Honor, we can forget about the witnesses, I would rather go on and be sentenced right here and now, sir."

The court repeated that the defendant had the right to have witnesses called, and then, after some demurring, the defendant agreed to have the witnesses appear. The judge adjourned court until the following day when a Robert Seymore appeared and the defendant questioned him. Another summoned witness, a Mr. Waldo, did not show up. Mr. Filippone now asked Edwards: "Would you rather have this case be continued on trial to see if we could locate Waldo for you or would you rather have it disposed of today?"

Edwards replied: "I would rather have it disposed of today."

The court found Edwards guilty and sentenced him to from 6 to 20 years in the Eastern State Penitentiary.

On June 8, 1960, Edwards petitioned the Court of Common Pleas of Philadelphia County for a writ of habeas corpus, asserting that he had been denied due process of law in that the court failed to provide him counsel. The court of common pleas, after hearing argument but without taking evidence, dismissed the petition. This appeal followed.

In his brief filed with this Court the appellant alleges that the trial judge asked him: "Do you want a lawyer?" and that he replied, "Yes, sir." He then

states: "Whereupon, the said trial judge turned to the general court room audience (spectator section) sic! and verbally inquired thereto: 'Are there any attorneys in the audience?'"

Without the slightest bit of evidence to support this averment, and with all the practice, customs and procedure of our criminal courts arguing against its verisimilitude, it is apparent that the petitioner has drawn on a very active imagination in portraying this scene which he has obviously confused with the proverbial query coming from the platform or stage (when one of the principals has collapsed in mid-act or mid-speech), namely, "Is there a doctor in the house?"

In *Commonwealth v. Kadio,* 179 Pa. Superior Ct. 196, the appellant claimed that he had been overreached in being deprived of counsel. The Superior Court said: "There is a presumption that the proceedings were regular and that the court properly performed its duty to appellant regarding his right to counsel . . . He cannot sustain his burden of showing irregularity or unfairness by general, vague, undetailed averments, and conclusions unsupported by competent evidence."

The petitioner obviously produces another piece of manufactured melodrama when he says that the assistant district attorney, while in court, approached him and sotto voce (the appellant describes it as "beyond the earshot of trial court stenographer") asked him whether he wanted to go on trial that day. The petitioner says that he agreed to go on trial provided he had a court-appointed attorney and that he would be satisfied to be tried without a jury. Then, the petitioner says: "Said district attorney then stepped to the bar of the court and verbally (in earshot of stenographer) employed deceit and trickery on your relator by compiling several propositions in *one* statement, and presenting the whole to relator in the form of *one* question."

This bold but wild shot fails to hit any target of credibility because, as was said in *Commonwealth v. Kadio,* supra, it is "unsupported by competent evidence."

With regard to the proposition of being tried without counsel in a noncapital case, this Court said in *Commonwealth ex rel. McGlinn v. Smith,* 344 Pa. 41, 49: "The fact that the Supreme Court of Pennsylvania has never during its two and a half centuries of existence deemed it the duty of trial courts to provide (except in capital cases) counsel for accused persons where none was asked for strongly supports the postulate that the failure to provide counsel under the circumstances here present is *not* a denial of 'due process of law,' a fundamental of Anglo-Saxon justice which has been expressed in every constitution of this state and upheld by its judiciary since the American Union was formed."

In *Commonwealth ex rel. Uhler v. Burke,* 172 Pa. Superior Ct. 108, 114, President Judge RHODES said: "Our courts have repeatedly said that failure to provide counsel when none is requested, or to advise a defendant that counsel will be assigned to him upon request does not constitute, ipso facto, a denial of due process or other violation of the defendant's constitutional rights in noncapital cases."

Of course, no court worthy of the name would deny counsel to an accused simply because he did not ask for one in a formal manner or if it was apparent that he was ignorant of his rights or if, because of circumstances beyond his power to direct, he had no opportunity to ask for counsel. On the other hand no court worthy of respect as a deliberative tribunal would release a dangerous criminal, convicted after a fair trial, to prey on society when all the facts demonstrate that he was allowed the fullest chance to ask for counsel and patently was satisfied to go to trial without coun-

sel. Especially is this true when the trial court exerted itself in every possible manner to help the defendant in presenting his defense through cross-examination of Commonwealth witnesses and production of witnesses of his own.

The trial judge in this case leaned backward to a Tower of Pisa angle in protecting the defendant's rights in every phase of the case. The trial spanned two days mostly because the judge adjourned court the first day to allow the defendant to get witnesses. The defendant could at any time have simply stated: "I want a lawyer." He certainly knew the functions of a lawyer. He had counselled with two and possibly three attorneys prior to the trial.

The record would suggest that the reason Edwards did not ask for a lawyer at his trial is that he saw some advantage in being his own lawyer. By being lawyer-client in one, he could testify in the guise of asking questions, which he did. Nor was his performance as his own counsel a blundering job. While it cannot be said that he performed as an amateur Clarence Darrow, neither can it be said that he was wholly ignorant of the manner of putting questions so as to elicit answers which he assumed would be helpful to his case.

Harry Edwards has had his day in court. His crime was a vicious one. In broad daylight he walked up to his victim with a pistol in his hand and said: "Okay, bud, get in if you don't want to get your brains blowed out you will do just as I tell you."

He thrust the pistol into his victim's ribs and compelled him to drive to an abandoned shack where, assisted by a confederate, he threw him into a dark room, tied and gagged him, and made off with the victim's car after taking all his money, a total of $4500.

Edwards' petition for a writ of habeas corpus is a crude attempt to deceive the Court through the utterance of blatantly patent falsehoods. It is the spirit of

our law, and it should never be otherwise, that even a criminal of the basest dye, has the right to bring such an action as was initiated in this case because to limit its use could someday prejudice the rights of a defendant whose petition has merit in form or substance. The appellant's has neither—in abundance.

Judgment of the Superior Court affirmed.