Commonwealth ex rel. Bishop, Appellant, *v.*
Claudy.

Argued April 23, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Thomas M. Hyndman, Jr.,* for appellant.

*John W. Mentzer,* District Attorney, with him *Frank P. Lawley, Jr.,* Assistant Deputy Attorney General and *Robert E. Woodside,* Attorney General, for appellees.

Opinion by Mr. Justice Allen M. Stearne, May 25, 1953:

The Court of Common Pleas of Fulton County dismissed relator's petition for a writ of habeas corpus after consideration of the petition and the answers thereto filed by the district attorney and the warden of the western penitentiary. The only question raised on this appeal is whether or not the learned court below was required to hold a hearing before disposing of the matter.

There can be no doubt that prior to the Act of May 25, 1951, P. L. 415, 12 PS 1901 et seq., it was proper for a court to dismiss a petition for writ of habeas corpus without a hearing if the petition and answers raised no material or substantial question of fact: *Commonwealth ex rel. De Poe v. Ashe,* 167 Pa. Superior Ct. 23, 74 A. 2d 767. As Chief Justice Moschzisker said in *Commonwealth v. Curry,* 285 Pa. 289, 132 A. 370, at

p. 299: "The points of law raised by the pleadings are usually decided on the documentary evidence in the record. . . ." The Superior Court has approved the same practice since the passage of the Act of 1951, supra: *Commonwealth ex rel. Chambers v. Claudy,* 171 Pa. Superior Ct. 115, 90 A. 2d 383; *Commonwealth ex rel. Reynolds v. Burke,* 173 Pa. Superior Ct. 146, 96 A. 2d 193.

The careful and comprehensive opinion of the learned court below clearly demonstrates that no issue of fact which required a hearing was raised by the present petition. Relator, Walter Bishop, was convicted of second degree murder on October 7, 1950, for the death of his brother, Lester Bishop. Evidence at the trial showed that there had been a quarrel between the brothers in which the relator Walter had been severely beaten, that Lester had proceeded to the front of the house and was damaging relator's automobile with a plank, that relator appeared with a loaded shotgun, fired both barrels, and fatally wounded his brother.

The first allegation of the petition which was argued to this Court is that the witnesses for the Commonwealth were rehearsed, intimidated, and fearful of the police. This is obviously no more than a conclusion, and the only facts alleged in support of it are contained in the affidavit of relator's father, Charles Bishop, which was appended to the petition. Taken most favorably to relator, this affidavit establishes only that Charles Bishop made a statement to the police shortly after the shooting which he later regretted having made, that he fled to the State of Maryland to avoid testifying at his son's trial, and had to be brought back by appropriate legal process and fined for contempt of court before he testified at the trial. All of this shows an understandable reluctance on the part of the father

to give testimony which would help to convict one of his sons of killing another son, but affords not the slightest suggestion that any of the statements made by the father at any stage of the proceeding were untrue. Since the facts averred could not possibly afford grounds for relator's release, it would serve no purpose to hold a hearing to determine their veracity.

The second contention is that the Commonwealth altered the condition of the murder weapon before offering it in evidence. Relator's explanation of the manner in which his brother's death occurred is that he pointed the shotgun away from the brother, intending only to frighten him away from the car by the blast; that the barrel of the shotgun was obstructed with dirt so that the barrel burst and discharged the shot to the right of the direction in which the gun was pointed. Relator now claims that the Commonwealth made it appear at trial that the barrel had burst because it was defective, rather than obstructed, thus making relator's story implausible. The record of the trial shows, however, that the Commonwealth's evidence *corroborated* relator's story that the gun barrel burst as the result of an obstruction. The ballistics expert called by the Commonwealth said: "It is very definitely identifiable as an obstruction burst. I have examined many burst barrels. This is an obstruction burst." It would certainly serve no purpose to hold a hearing to enable relator to establish a fact which was conceded by the Commonwealth at the trial.

Finally, relator avers that vital evidence was withheld by the police at trial. The evidence referred to is relator's bloodstained shirt, which he knew the police had at time of trial. Neither he nor his counsel made any request at trial for this evidence although they knew it to be in the possession of the prosecuting authorities. It is clearly too late to make such demand

now. (The industry and ability of trial counsel appointed at the expense of the county have never been questioned and are eloquently evidenced by the nineteen, carefully prepared points for charge which appear in the record.) The learned court below suggests that the reason no demand was made for the bloody shirt at trial is that relator hoped to prove by it only that his brother had beaten him severely immediately before the homicide, and this fact was amply established by other evidence. Indeed, the Commonwealth introduced pictures of the relator showing the cuts and bruises he sustained in the fight with his brother.

It is clear therefore that no hearing would have been necessary to dispose of this petition prior to the Habeas Corpus Act of 1951, supra. Has the Act effected such a change in procedure that a hearing is necessary in every case where a rule to show cause is allowed? The language of the Act in this regard appears to be mandatory, and we clearly so regarded it in *Commonwealth ex rel. Elliott v. Baldi,* 373 Pa. 489, 96 A. 2d 122, when we said: "By way of caution we may add that when a petition for a writ of habeas corpus has been presented and the Court directs the writ to issue or allows a rule to show cause why the writ should not be issued, a hearing is necessary: Act of May 25, 1951, P. L. 415, §§ 4, 5."

But it would be absurd to suppose that the Legislature intended to direct the taking of testimony when there is no issue of fact to be decided or when the facts averred by relator, even if believed, are insufficient to warrant granting the writ of habeas corpus. When the petition, answer, and original record disclose only questions of law, then, in this as in any other civil proceeding, the only hearing necessary is oral argument to hear relator's views on the legal issues involved. That requirement has been satisfied here.

Relator raised several other points, each of which was adequately answered by the learned court below, but they are so obviously without merit that they were not even argued by the able counsel whom we appointed to represent relator in this Court. We will not allude to them further.

Order affirmed.