## Commonwealth ex rel. Linde, Appellant, *v.* Maroney.

Submitted October 12, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Elmer Carl Linde,* appellant, in propria persona.

*Edward B. Doran,* Assistant District Attorney, and *Richard E. McCormick,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, January 12, 1965:

On September 6, 1958, the appellant, Elmer Carl Linde, was convicted by a jury of murder in the first degree. He was represented during the proceedings by court-appointed counsel. Punishment was fixed at life imprisonment. A motion for a new trial was dismissed and judgment of sentence imposed in accordance with the verdict. No appeal was filed.

On December 12, 1963, an action in habeas corpus was instituted which the lower court dismissed without hearing. An appeal from that order is presently before us.

The evidence at trial established that the appellant and one Ruth Nolan were close personal friends; that she was desirous of ending their relationship and requested him to remain away from her home; that on June 13, 1958, after consuming a quantity of alcohol and stealing a gun from his rooming house, the appellant went to the home shared by Ruth Nolan and her mother about 1:30 o'clock in the morning; that he tried to shoot her by firing the gun through a bedroom window; that he then broke into the house and fired five bullets into her body causing wounds from which death resulted in minutes; that in the melee, he himself received a serious gunshot wound in the side of his body.

Appellant first complains that he was not afforded the assistance of counsel at the hearing before the

committing magistrate. The record discloses that at this hearing the accused plead "not guilty", and that nothing that occurred at that time was introduced in evidence at trial on the indictment or in any way entered into the jury's determination of his guilt or innocence. Under the circumstances, no violation of constitutional rights occurred. See, *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 198 A. 2d 565 (1964); *Commonwealth ex rel. Herge v. Rundle,* 415 Pa. 36, 202 A. 2d 24 (1964).

Appellant next complains that a coroner's inquest was conducted in his absence which violated his constitutional right to be present "at every stage of the proceedings." The record does not disclose whether or not such an inquest took place, but assuming such to be the fact, the complaint is without merit.

In the instant case, the appellant was taken before a magistrate following the issuance of a warrant, given a preliminary hearing and held for the grand jury. The coroner's inquest was not any part of the proceedings whereby the appellant was brought to justice. It was not an adversary proceeding and, at most, it served as an aid in the detection of crime and was merely advisory to those charged with the administration of the criminal law. See, *Commonwealth ex rel. Czako v. Maroney,* 412 Pa. 448, 194 A. 2d 867 (1963), and *Commonwealth ex rel. Tanner v. Ashe,* 365 Pa. 419, 76 A. 2d 210 (1950). The appellant suffered no prejudice as a result and his rights were not infringed upon because he did not have the opportunity to be present: See, Act of August 9, 1955, P. L. 323, §1248, 16 P.S. §1248: "The coroner may, in his discretion, admit or exclude members of the public from any inquest or part thereof, and admit or exclude any person interested or suspected . . . . No person excluded may appear by attorney . . . ." See also, *Commonwealth ex rel. Bishop v. Claudy,* 373 Pa. 523, 97 A. 2d 54 (1953), affirming 2

Cumb. 105 (1952) ; *Commonwealth ex rel. Huffman v. Claudy,* 36 Erie 159 (1952) ; and 8 P.L.E. Coroners §6 (1958).

Appellant next complains that his constitutional rights were violated when he was not afforded counsel immediately following his arrest, and particularly before and at the time he was interrogated by the investigating police officers.

No eyewitnesses saw the actual shooting involved.[1] When the police first arrived on the scene, Ruth Nolan was dead. The appellant was lying seriously wounded at or near her feet. The murder weapon was found in an adjoining room. The appellant was immediately taken to a hospital where an emergency operation was performed. Later that morning, he was interrogated by the police at which time he was first and immediately warned that anything he said would be recorded and used against him in court. However, the assistance of counsel was not offered nor requested. His description of the event was stenographically recorded. Subsequently, it was typewritten and four days later presented to the appellant to read. After suggesting an important correction, he signed it. This statement was admitted in evidence at trial.[2] The question immediately arises: Were the police required to afford or at least offer the assistance of counsel before proceeding with the questioning. Since this admittedly did not happen, does this failure constitute a denial of

---

[1] The victim's mother, who was at home at the time, heard the shots which went through the bedroom window, saw the defendant coming into the house and going towards the victim's bedroom, and then heard a series of shots immediately following.

[2] A general objection, with no specific reason assigned, was recorded against the admission of the statement. No motion to suppress was made at any time. At trial, the appellant did not deny making the statement or suggest any coercion. He testified that he had no recollection of the event.

"the assistance of counsel" in violation of the Sixth Amendment to the Constitution of the United States and, therefore, render inadmissible the incriminating statement? Our conclusion is to the contrary.

The statement here involved was obtained through a perfectly legitimate, police investigation of what was then an unsolved murder. While the circumstances undeniably indicated the guilt of the appellant, this conclusion was far from being exclusive. Before an arrest was made, the police were not only justified in their actions, but were required in fulfillment of their responsibilities to hear "the other side" and to give the suspected individual the opportunity of explanation. To hold now that his description of the event at that time is inadmissible, because he did not have counsel or waive his right thereto beforehand, is tantamount to precluding the police from ever interrogating individuals suspected of crime, and could result in barring from evidence all admissions obtained in the course thereof. No decision has as yet stated this to be the law.

*Escobedo v. Illinois*, 378 U.S. 478 (1964), relied upon by appellant, is inapposite, and must be read in light of the facts therein presented. In that case, the defendant requested the opportunity to see his counsel before and during the questioning, which requests were rejected; the police knew he had engaged and consulted counsel several days before he had been taken into custody; the engaged counsel had come to the police headquarters, and had attempted for three hours to see his client during the period of interrogation, and was, in fact, in an adjoining room but was "quickly ushered away"; therein the accused was already in custody but was not advised of the fact that any statements made would be used against him in court; and finally, the accused was informed by a police officer that if he made the desired statement, he

would be released and held only as a witness. These and other distinguishing salient factors readily indicate why the ruling in that case is not controlling here. *Escobedo* is limited to and controlling in the situation where a request for counsel is rejected and no warning is given of the right to remain silent. These are not the facts here.

However, the lower court erred in dismissing the instant proceeding without hearing.

At trial, the court submitted and left the question of voluntariness of the appellant's incriminating statements to the jury to resolve. This procedure was in accordance with the practice long followed in this Commonwealth and approved by the Supreme Court of the United States in *Stein v. New York*, 346 U.S. 156 (1953). However, in *Jackson v. Denno*, 378 U.S. 368 (1964),[3] it was held that this procedure is in violation of due process. Under the mandate of *Jackson*, supra, the appellant is entitled to have a hearing consistent with the requirements of due process, separate and apart from the proceedings before the trial jury, wherein the question of voluntariness shall be determined by the court. This is so even though there is ample evidence, aside from the incriminating statements, to support the conviction. See, *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964); and, *Commonwealth ex rel. Gaito v. Maroney*, 416 Pa. 199, 204 A. 2d 758 (1964).

While only a general objection to the admission of the statements was noted of record, the circumstances under which the statements were made render the question of voluntariness one of prime importance.

While the question of whether or not *Jackson*, supra, applies retroactively is not raised herein, it is our

---

[3] In all fairness to the court, it should be noted that *Jackson v. Denno*, 378 U.S. 368 (1964), which changed the law, had not yet been decided at the date the present proceedings were considered.

considered conclusion that it does. See, *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965).

The order of the court below is reversed and the record is remanded to said court with directions to hold a hearing in accordance with the mandate of *Jackson*, supra. It shall be consistent with due process and the defendant shall be present with counsel. After said hearing, the court shall record its findings and conclusions and enter an order based thereon and consistent therewith.

Mr. Justice COHEN dissents and would direct the lower court to issue the writ and grant a new trial.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the majority opinion but wish to add a few observations about the troublesome questions raised by *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964).

As the majority opinion indicates, it is this Court's view that *Escobedo* is basically limited to the particular facts and circumstances of that case. That is, we do not believe that the rule of the case extends to the situation where the accused confesses in the absence of counsel and there has been no request for counsel. The present case is not the first in which our Court has so held. See *Commonwealth ex rel. Storch v. Maroney*, 416 Pa. 55, 204 A. 2d 263 (1964); *Commonwealth v. Coyle*, 415 Pa. 379, 403, 203 A. 2d 782, 794 (1964). With this result, *People v. Hartgraves*, 31 Ill. 2d 375, 202 N.E. 2d 33 (1964), and *People v. Agar*, 44 Misc. 2d 396, 253 N.Y.S. 2d 761 (S. Ct. N.Y. 1964), are in accord. Cf. *People v. Stanley*, 15 N.Y. 2d 30, 203 N.E. 2d 475, 255 N.Y.S. 2d 74 (1964). However, a contrary result has been reached in California. *People v. Dorado*, 40 Cal. Rptr. 264, 394 P. 2d 952 (1964), rehearing granted.

While I join in the majority opinion and conclusion, I am not entirely untroubled by the fact that, at least in part, our test turns on a request for counsel. There are some logical problems in making it do so. See *People v. Dorado,* supra, at 268, 394 P. 2d at 956. In fact, Justice WHITE in dissent in *Escobedo,* joined by Justices CLARK and STEWART, sees difficulty in limiting the *Escobedo* majority's ruling to cases where counsel has been requested. 378 U.S. 478, 495, 84 S. Ct. 1758, 1767. Among other things, I am somewhat bothered by the fact that a "request test" may protect only those who know enough to request counsel. Those most likely to know that they should request counsel are persons often in criminal trouble before, perhaps the habitual criminal. Those who are having their first encounter with the law may be much less likely to have either the knowledge or presence of mind to request counsel.

Nevertheless, I do see a greater deprivation of rights when an accused requests counsel and the state refuses to permit him to exercise that right. I am willing, at least for the present, to believe that this situation violates constitutional imperatives, while the situation in the present case does not. In part, this willingness stems from *Escobedo's* repeated references to the "circumstances" of that case.

No doubt, we shall have further guidance from the Supreme Court of the United States on this subject. In any event, if the law enforcement officers of this Commonwealth unfailingly advise one upon whom the spotlight of accusation has swung that he has a right to counsel, then the stress in this area will be substantially lessened.