Commonwealth ex rel. Washington, Appellant, *v.* Maroney.

600

Argued October 3, 1967. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

James M. Houston, with him James M. Carter, and Houston, Cooper, Speer & German, for appellant.

Edwin J. Martin, Assistant District Attorney, with him Robert W. Duggan, District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 14, 1967:

The seminal decision of Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55 (1932), in which a trial judge's appointment of the entire county bar to defend the Scottboro boys was found to constitute a denial of the "effective assistance of counsel," has produced what is today an axiomatic judicial assumption that any right to representation includes the right to "effective" or "adequate" representation. But a statement of principle rarely solves concrete cases; the difficult questions, requiring that content be given to this right, remain.

Appellant William F. Washington was convicted in 1959 by a judge sitting without a jury of four counts of armed robbery and one count of burglary. He received four concurrent sentences of ten to twenty years for the robberies and one consecutive sentence of two and one-half to five years for the burglary. Defense counsel, a member of the Legal Aid Society of Pittsburgh, prepared but did not file new trial motions and consequently no appeal was taken.

A pro se habeas corpus petition was filed on September 22, 1964 alleging in substance that Washington was denied effective assistance of counsel and that a confession introduced to support the burglary convic-

tion had been unconstitutionally obtained. Confronted with allegations not refuted of record and sufficiently substantiated by factual averments which would, if proven, entitle Washington to relief, Allegheny County Common Pleas President Judge ELLENBOGEN properly appointed counsel and ordered a hearing. Both the hearing judge and the Superior Court subsequently denied relief. We granted allocatur to explore a facet of the right to effective representation, i.e., the weight to be accorded the fact that counsel has had little time to confer with his client, with which we had not previously been directly confronted.

Courts have employed a variety of formulae—"a mockery of justice,"[1] "the . . . absence of judicial character in the proceedings as a whole,"[2] "a travesty,"[3] "a sham,"[4] or "a farce"[5]—to characterize the degree of degeneration of the proceedings necessary before a finding of ineffective representation should be made. We have stated: "[T]he concept of 'effective representation' must be strictly construed and no deprivation found to result unless appellant's representation was so lacking in competence as to make a mockery of justice." *Commonwealth ex rel. Mullenaux v. Myers*, 421 Pa. 61, 66-67, 217 A. 2d 730, 733 (1966) ; see *Commonwealth ex rel. Crosby v. Rundle*, 415 Pa. 81, 87, 202 A. 2d 299, 303 (1964), cert. denied, 379 U.S. 976, 85 S. Ct. 677 (1965).[6] However, whatever the applicable char-

---

[1] *United States v. Tribote*, 297 F. 2d 598, 601 (2d Cir. 1961) ; *Edwards v. United States*, 256 F. 2d·707, 708 (D.C. Cir.), cert. denied, 358 U.S. 847, 79 S. Ct. 74 (1958).

[2] *Diggs v. Welch*, 148 F. 2d 667, 670 (D.C. Cir.), cert. denied, 325 U.S. 889, 65 S. Ct. 1576 (1945).

[3] *State v. Keller*, 57 N.D. 645, 648, 223 N.W. 698, 700 (1929).

[4] *Hendrickson v. Overlade*, 131 F. Supp. 561, 564 (N.D. Ind. 1955).

[5] *Frand v. United States*, 301 F. 2d 102, 103 (10th Cir. 1962).

[6] Tautological formulations such as that employed in *Commonwealth ex rel. LaRue v. Rundle*, 417 Pa. 383, 207 A. 2d 829

acterization, a court is compelled to test, at least in some minimal way, the effectiveness of counsel's efforts. We approach such a task always mindful of the presumption that counsel is competent and with the realization that no one, be they members of Bench or Bar, relishes an opportunity to evaluate the product of another attorney. Yet both counsel and the courts must recognize that the main issue is whether the accused's rights have been adequately protected; the defense counsel is not on trial but rather his aid is sought to further this inquiry.

Implicit in each of our ineffectiveness cases has been the necessary process of judicial resolution of any claimed denial of the right to effective assistance of counsel. That process must entail a comparison of the trial (and pretrial) course adopted by counsel with the alternatives available. An example of this process is *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A. 2d 236 (1967). Sprangle insisted that trial counsel was incompetent for he (1) failed to produce a witness who allegedly observed the offense; (2) failed to elucidate for the jury the type of gun employed in the crime; and (3) introduced into evidence appellant's prior criminal record. Rejecting each of these claims, we found that there existed a reasonable basis to support counsel's chosen course—(1) no purpose would have been served by attempting to uncover the missing witness for there was no showing that he would have been helpful to the defense, (2) discussion of the gun was unnecessary for appellant admitted the shooting and relied upon his claim of self-defense, and (3) introduction of the prior record was explained by the fact that, since Sprangle was testifying (and the record thus admissible to attack credibility), counsel hoped

---

(1965) that the asserted ineffectiveness must amount to a denial of "due process" do not advance the inquiry.

to mitigate its impact upon the jury by revealing appellant's history as part of his own case.

A similar methodology was utilized in *Commonwealth ex rel. LaRue v. Rundle,* 417 Pa. 383, 207 A. 2d 829 (1965) where the alleged claim of ineffectiveness concerned counsel's failure to stress prior suicide attempts by the murder victim. We concluded that it was well within counsel's discretion to decide the emphasis which should be placed on this element of the defense since this fact had been placed before the jury by appellant's own testimony.

Our task in cases of this nature therefore encompasses both an independent review of the record, see *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A. 2d 236 (1967), and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. Perhaps *Brubaker v. Dickson,* 310 F. 2d 30, 38 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S. Ct. 1110 (1963),[7] best describes this necessary process: "Facts are alleged from which it would appear that these potential defenses would have suggested themselves to a reasonably diligent trial counsel. The defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice." We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in

---

[7] Accord, *People v. Ibarra,* 60 Cal. 2d 460, 386 P. 2d 487, 34 Cal. Rptr. 863 (1963) (TRAYNOR, C. J.).

favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.[8]

It thus becomes necessary to examine in some detail the events of trial as amplified by the testimony given at the habeas corpus hearing. Washington, in company with Alvin Dixon and William Balser, allegedly participated in a series of gas station robberies. The first was allegedly perpetrated in the early morning hours of October 6, 1959. The station attendant, badly beaten by the robbers, was unable to identify his assailants. However, Dixon testified that Washington participated in this armed robbery.[9]

Two of the remaining three offenses took place on the night of October 21 and the third on the night of the 22nd. In each of these events the station attendant positively identified Washington at trial as one of the participants and both Dixon and Balser[10] testified that Washington was involved. Albert Ritter, the attendant robbed on the 22nd, staggered to the highway,

---

[8] Cases such as *Commonwealth ex rel. Gallagher v. Rundle*, 423 Pa. 356, 223 A. 2d 736 (1966) and *Commonwealth ex rel. Jones v. Maroney*, 417 Pa. 567, 209 A. 2d 285 (1965) indicate that, for relief to be granted, appellant must demonstrate that counsel's ineffectiveness worked to his prejudice. Appellant, however, advances the proposition that any requirement of prejudice is inconsistent with *White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050 (1963) and *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157 (1961). Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. Obviously, then, if there is no reasonable basis to support trial counsel's decisions (a finding prerequisite to a conclusion of ineffectiveness), his decisions a fortiori were prejudicial to the client.

[9] Balser was apparently not involved in this robbery.

[10] Balser had pled guilty to the offenses involved but had not yet been sentenced.

hailed a passing motorist and asked the driver to follow the getaway automobile. The motorist obtained the license number of the vehicle and immediately notified the New Kensington police who apprehended Washington, Dixon and Balser ten minutes later. A search of the car revealed a double-barreled shotgun and three revolvers.

Norman Sadja, owner of Firearms Unlimited, stated at trial that his establishment was burglarized on two separate occasions, once on August 28 and once on August 30. No inventory was taken until after the second burglary and no attempt was made at trial to show that either of the two guns in Washington's possession were stolen during either offense. However, a Pittsburgh police officer did testify that Washington signed a statement admitting that he had taken "two guns" from Firearms Unlimited but that Washington did not specify on which date. Portions of this statement were read by the officer without objection from Washington's court appointed counsel.

Washington's version of the above events constituted his sole defense. He contended that he had purchased the revolvers from an unknown source as an "investment." While shooting pool, he was allegedly approached by Balser who wished to purchase the weapons. Balser then drove Washington to Washington's home, obtained the guns and then, allegedly without Washington's acquiesence, drove to a gas station and committed the first armed robbery. Washington insisted that his companions forced him to participate in the other robberies by threatening to reveal his role in the first robbery if he did not participate. Washington testified at trial that his statement confessing the burglary was obtained after he had been deprived of sleep, food and bathing facilities for eleven days and after his repeated requests for an attorney were denied. The trial judge then questioned the police officer who

denied "abusing" Washington and insisted that food was furnished when necessary. Counsel moved for a directed verdict of not guilty on all indictments but did not specify the allegedly coerced confession as support for the requested verdict on the burglary indictment.

The habeas corpus hearing disclosed that from the time of his arrest to the date of trial Washington had at most three contacts with individuals who were unconnected with the police or prosecutor. His mother visited him once; he had at most two visits from a social worker representing Pittsburgh Legal Aid. The social worker concluded that Washington could afford counsel and so informed Washington's mother (by letter). Washington testified that he saw his attorney for approximately one minute in open court prior to trial. His attorney, having tried over **1,000** cases during his career (as of 1959), had no independent recollection of Washington's trial although he assumed that he must have conversed with appellant for five to ten minutes.[11] Counsel could recall no other contact with Washington and his memory could not be refreshed by a reading of either the Legal Aid file or the trial transcript. The files of Legal Aid were introduced into evidence; they apparently contained the social worker's report and a letter written by Washington prior to trial. Although both documents contained appellant's version of the robberies, there is no indication that either made reference to his allegedly coerced burglary confession.

Appellant asserts that counsel's lack of time to confer and prepare is inherently prejudicial and that, combined with three alleged trial errors, must result in a

---

[11] This assumption appears to be based upon the fact that Washington had signed a waiver of a jury trial and that a certain amount of time must have expired during which counsel explained the import of signing the waiver form.

finding of ineffective assistance of counsel. The problem of the hastily appointed or insufficiently prepared attorney is one of first impression for this Court.[12] Appellant insists, citing *Fields v. Peyton,* 375 F. 2d 624 (4th Cir. 1967) and *Twiford v. Peyton,* 372 F. 2d 670 (4th Cir. 1967), that once it is demonstrated that counsel had but a brief time to prepare, a prima facie denial of effective assistance has been shown and the burden of proof that counsel's representation was effective then should be placed on the state. We can find no justification, however, for such an allocation of the burden of proof. As with other assertions of a denial of constitutional rights in post-conviction proceedings, the burden remains throughout with the prisoner to demonstrate any constitutional deprivation.[13]

We thus adopt the following statement of the Superior Court contained in *Commonwealth ex rel. Dion v. Tees,* 180 Pa. Superior Ct. 82, 88, 118 A. 2d 756, 758 (1955) rejecting the contention that shortness of time per se constitutes ineffectiveness: "The mere allegation of short notice to a defendant and short conference with counsel is not alone self-sustaining. . . ." The length of counsel's conversation with his client is thus

---

[12] This problem has been the subject of increasingly frequent litigation both in state and federal courts. See Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 Nw. U. L. Rev. 289, 309-11 (1964); Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Calif. L. Rev. 1262, 1276-86 (1966).

[13] *Commonwealth ex rel. Storch v. Maroney,* 416 Pa. 55, 204 A. 2d 263 (1964) (coerced confession, unreasonable delay in preliminary hearing, prejudicial pre-trial publicity); *Commonwealth ex rel. Crosby v. Rundle,* 415 Pa. 81, 202 A. 2d 299 (1964), cert. denied, 379 U.S. 976, 85 S. Ct. 677 (1965) (guilty plea); see Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §3, 19 P.S. §1180-3 (Supp. 1966); contra, *Commonwealth ex rel. Fairman v. Cavell,* 423 Pa. 138, 222 A. 2d 722 (1966) (Waiver of counsel where record is silent).

but *one* of the factors which we must evaluate in light of the nature of the charge, the issues presented, the availability of witnesses, etc., to determine whether the course chosen by counsel had any reasonable basis when compared with the alternatives available. See *United States v. Ray,* 351 F. 2d 554 (4th Cir. 1965) ;[14] *Eubanks v. United States,* 336 F. 2d 269 (9th Cir. 1964). Of course, as the opportunity for consultation diminishes, there is a corresponding increase in the weight which must be accorded to this factor.

Three tactical errors by trial counsel, here listed in ascending order of importance, are asserted as demonstrative of counsel ineffectiveness: (1) failure to investigate possible witnesses; (2) failure to impeach the testimony of Balser; and (3) failure to object to the introduction of an allegedly coerced burglary confession. The first two asserted errors, directed primarily at the armed robbery convictions, are not sufficient to support a conclusion that counsel's representation did not comport with constitutional mandates. At trial, Dixon testified that one Peter Jackson participated in the October 6 robbery and appellant mentioned that an unidentified girl was also present. Post-conviction counsel now insists that some attempt should have been made to ascertain the knowledge that these individuals might have possessed as to the particulars of the first robbery; however, no testimony was offered at the hearing and no facts were alleged tending to show that their testimony would have been helpful. Therefore, as we held in *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A. 2d 236 (1967), this alleged error, absent a demonstration that

---

[14] Although the Fourth Circuit Court of Appeals has not explicitly so stated, *Ray* would appear to have been implicitly overruled by both *Fields v. Peyton,* supra and *Twiford v. Peyton,* supra, for *Ray* did not give any presumptive weight to the mere fact that counsel had only brief contact with his client.

the missing testimony would be helpful, cannot be equated with a conclusion of ineffective assistance.[15]

Trial counsel stated at the habeas corpus hearing that he could have checked the "pink sheets" (apparently Federal Bureau of Investigation Identification Records) to ascertain if either of the two accomplices had a criminal record.[16] These convictions could then have been employed to attack the credibility of the accomplice testimony. However, in view of the fact that appellant elected to be tried before a judge alone, counsel could have permissibly concluded as a trial tactic and in light of trial realities that any attack upon credibility would have little impact.[17]

Trial counsel's failure to object to the confession stands upon a different footing. Since the store owner did not testify that any of the revolvers found in Washington's possession were stolen, the entire Commonwealth case rested upon Washington's confession. Counsel's failure to object to admission of this confession can be most easily explained by insufficient

---

[15] Trial counsel's failure to call character witnesses is also questioned; there was no showing that such witnesses existed or were available.

[16] Balser apparently had twice been convicted of robbery and had one larceny, one forgery and one fraud on an innkeeper conviction.

[17] We here intend no modification of the principle enunciated in *Commonwealth v. McNair*, 208 Pa. Superior Ct. 369, 371, 222 A. 2d 599, 600 (1966) (quoting from *Commonwealth v. Richman*, 132 Pa. Superior Ct. 529, 532, 1 A. 2d 578, 579 (1938)) that "A defendant surrenders none of his substantive rights when he is tried by a judge without a jury under the Act of 1935 and the trial judge is required to give consideration to, and is bound by, the same legal principles as a jury." The core question is not whether the prisoner was deprived of his right to introduce evidence bearing upon a witness' credibility but whether counsel's decision not to do so had an adverse impact on the prisoner's right to constitutionally effective representation. This latter question can be answered only after an examination in the crucible of trial reality.

preparation. The Legal Aid file did not reveal the circumstances which appellant advanced at trial indicating that his confession may have been the product of unconstitutional police action. It was not until appellant volunteered,[18] without any assistance from trial counsel, the facts which would have supported a coercion claim that this possible issue entered the trial. Counsel's failure to object during the reading of excerpts of this statement was thus most probably a product of his lack of knowledge of a possible coercion claim.

We can find no reasonable legal basis to support counsel's failure to object. Without this confession the prosecution's case would have had no evidentiary basis. Nor is this a case such as *Commonwealth v. Snyder*, 427 Pa. 83, 233 A. 2d 530 (1967) where the confession was exculpatory and formed an integral part of defense strategy. Even the Commonwealth offers no possible explanation for counsel's actions. We therefore are constrained to conclude that, as to the burglary conviction, appellant was deprived of effective assistance of counsel and as to that conviction a new trial is granted.

*Jones v. Cunningham*, 313 F. 2d 347 (4th Cir.), cert. denied, 375 U.S. 832, 84 S. Ct. 42 (1963), is in all material particulars identical to the instant case. Jones' attorney was appointed on the eve of trial and made no attempt to investigate an allegedly coerced confession. The court there stressed that a span of three days between arrest and confession combined with a delay in the holding of a preliminary hearing should have alerted counsel that something might well have been amiss. Washington was arrested on Octo-

---

[18] The facts supporting the present allegation of a coerced confession were disclosed in a rambling discourse by appellant in response to the following question of counsel: "How about the stealing of the guns?"

ber 22, given a preliminary hearing on the series of robbery charges on October 26 and 27 but not as to the burglary until November 1. The date of confession does not appear of record; Washington insists it was obtained after eleven days of incarceration. The *Jones* court pertinently observed (supra at 351-53): "If there was a reasonable basis for challenging the confession and it was not challenged because of the late appointment of the lawyer, the failure to make proper investigation, whether for lack of opportunity or otherwise, bears directly on the character of the representation afforded.

. . .

"It was no more than a gesture to equip Jones for his day in court with a lawyer of excellent reputation who sought no more than the fleeting opportunity to consult with the accused and made no effort to map out possible defenses.

. . .

"Here the case was not shipwrecked by bad seamanship; it was never launched."

Both the trial judge and the Commonwealth apparently proceeded on the assumption that an allegation of ineffective assistance attacks trial counsel's general competence. The trial judge, in his opinion denying the habeas corpus petition, observed: "We know . . . [trial counsel] to be a competent and able counsel and find that relator was afforded effective and adequate counsel at his trial." The issue is not counsel's reputation or his ability, but his stewardship of the challenged trial.[19] Nor is the issue, as framed by the trial court, whether the procedures of Legal Aid are constitutionally sufficient. We stress that each

---

[19] Where the trial court suspects that counsel may have had inadequate time to prepare, an on the record colloquy between court and prisoner would often be helpful to enable the court to determine if counsel in fact is prepared for trial.

case requires a resolution by examination of the alternatives available to trial counsel balanced against the course chosen.

Appellant offers as an independent basis for reversal that his confession was involuntary under the standards enunciated in *Davis v. North Carolina*, 384 U.S. 737, 86 S. Ct. 1761 (1966); the Commonwealth counters with an assertion that at best appellant is entitled to an evidentiary hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964). Since we have vacated appellant's burglary conviction, the validity of his confession, if introduced at the new trial, can there be litigated. Furthermore, we find it unnecessary to treat appellant's contentions that his waiver of a jury trial was not voluntary and that he did not waive his right to appeal, for these matters were not raised in the habeas corpus petition and no motion to amend was tendered. See *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A. 2d 236 (1967); *Commonwealth ex rel. Banks v. Myers*, 423 Pa. 124, 128-29, 222 A. 2d 880, 882 (1966).

The orders of the Court of Common Pleas of Allegheny County and the Superior Court are affirmed as to indictments Nos. 106, 107, 111 and 112, Oyer and Terminer November Sessions, 1959 (armed robbery indictments), and are reversed as to indictment No. 108 (burglary indictment); that judgment is vacated and a new trial granted.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

This appeal involves several 1959 convictions during which defendant was represented by an attorney who had tried over a thousand criminal cases. It is to the credit of the attorney that he could not remem-

ber some details of exactly what happened in 1959. As so frequently happens in recent habeas corpus and recent post-conviction proceedings and appeals therefrom, there is no doubt of defendant's guilt—indeed, in most of them, defendant relies solely upon recently created legal technicalities and does not even allege his innocence.

I would affirm all the convictions and judgments of sentences and the orders of the lower Court which were entered in this habeas corpus proceeding.