**STATE of Missouri, Respondent,**

v.

**William Ernest USSERY, Appellant.**

**No. 40606.**

Supreme Court of Missouri,
Division No. 1.

April 13, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Neale, Newman, Bradshaw, Freeman & Neale, Thom G. Field, Springfield, for appellant.

HOUSER, Commissioner.

This is a second appeal. William Ernest Ussery, convicted on October 16, 1946 of first degree murder, appealed to this court, which affirmed the judgment of conviction and sentence of life imprisonment. State v. Ussery, 357 Mo. 414, 208 S.W.2d 245. Because defendant was not represented by counsel on the first appeal this court on December 31, 1968 set aside its judgment affirming the judgment of conviction, in accordance with the decisions in Bosler v. Swenson, 8 Cir., 363 F.2d 154, and Swenson v. Donnell, 8 Cir., 382 F.2d 248, reinstated the cause on the docket of this court, ordered the circuit court to appoint counsel to represent defendant on the appeal and directed counsel to file a brief. On this second appeal defendant, by his counsel, has filed a brief raising two points.

Defendant, an indigent person, contends first that his constitutional rights under the Sixth and Fourteenth Amendments to the federal constitution, and Sections 10 and 18(a) of Article I of the state constitution, V.A.M.S. were violated because he was denied assistance of counsel for his defense at the preliminary hearing. He contends that questions and answers of a damaging nature given by him at that hearing were incorporated in a transcript which the trial judge admitted in evidence at a hearing on a motion to suppress a written confession defendant gave the police; that this contributed to the court's overruling the motion to suppress as a result of which the confession was admitted in evidence at the trial of the case; that if he had had the benefit of counsel at the preliminary hearing defendant would not have thus damaged his case.

The trial transcript shows that a copy of the transcript of the proceedings at the preliminary examination was admitted in evidence at the hearing of the motion to suppress. The preliminary transcript was not read into the record, however, and has since been lost. We do not know what it contained and are not advised what questions and answers of a damaging nature were given by defendant at the preliminary hearing. From the trial transcript we glean only that the preliminary transcript included the testimony of five named witnesses later used by the state in proving its case; that during the cross-examination of defendant on the motion to suppress the prosecuting attorney informed the court that at the preliminary hearing defendant "questioned the witnesses himself on cross-examination, and I think that his questions and his answers will throw considerable light on the merits of this motion"; and that at the preliminary hearing defendant was without counsel.

In support of his contention defendant cites Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. Hamilton was arraigned without counsel for a capital offense, to which he pleaded not guilty. His subsequent conviction and sentence to death was reversed as a violation of his constitutional right to counsel at the time of arraignment because under Alabama law arraignment is a critical stage in a criminal proceeding. Under the law of that state available defenses (such as insanity, pleas in abatement, improper drawing of grand juries, etc.) must be pleaded at that stage of the proceedings or the opportunity to assert those defenses at the trial is lost. The court reasoned that only with the guiding hand of counsel at that critical stage could the accused be enabled to know all the defenses available to him and to plead intelligently. Defendant also cites White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193. White, who was without counsel, was taken before a magistrate on a charge of murder. He pleaded guilty at the preliminary hearing. Later afforded counsel and tried be-

fore a jury on a plea of not guilty he was convicted and sentenced to death. The trial court admitted in evidence the plea of guilty made at the preliminary hearing. The judgment was reversed because of a violation of defendant's constitutional right to counsel, the court holding that in this case the preliminary hearing was a critical stage; that Hamilton v. Alabama applies, and that only by having counsel present would the accused have been able to know all the defenses available to him and to plead intelligently.

■ Defendant seeks to draw a parallel but the Hamilton and White cases do not present analogous situations. Hamilton was at a distinct disadvantage when he appeared at the arraignment without counsel; there was a distinct possibility of prejudice in not having counsel at a critical stage of the proceeding when important choices were to be made with respect to the invocation of defenses. In contrast, under Missouri law a preliminary hearing is not a critical stage of the proceeding, and a defendant does not have a constitutional right to counsel at his preliminary hearing where nothing appears in the record to show that defendant was prejudiced by lack of counsel. Crosswhite v. State, Mo.Sup., 426 S.W.2d 67 [3]. In this jurisdiction the inquiry at a preliminary hearing is whether there is probable cause to believe that a felony has been committed and whether accused is the offender and if so to bind him over to answer a formal charge in circuit court, State v. Turner, Mo.Sup., 353 S.W.2d 602, 604, and an accused is not bound to elect his defenses at the preliminary hearing on pain of losing them if he fails to do so. White was also at a disadvantage when he appeared at the preliminary hearing and entered a plea of guilty without counsel. The possibility of prejudice in this situation was inherent. In contrast with the Maryland procedure a defendant is not obliged to plead at preliminary examinations in felony cases in this state, and in this case defendant did not plead guilty at the preliminary hearing

Consequently White v. Maryland is not necessarily controlling as to the right of counsel. Pointer v. Texas, 380 U.S. 400, 402, 85 S.Ct. 1065, 13 L.Ed.2d 923.

■ In Ussery's case the possibility of prejudice due to absence of counsel was not manifest. Whether that possibility existed depended upon what occurred at the preliminary hearing; whether Ussery made any incriminating statements or gave damaging answers to questions. What occured there has not been shown. The transcript is unavailable. We are not apprised of the nature and content of the questions and answers claimed by defendant to have damaged him. It is indeed questionable whether defendant testified at the preliminary hearing. From the comments of the prosecuting attorney it appears that defendant did not testify at the preliminary, but only cross-examined the state's witnesses. The only possible basis for concluding that he testified is the prosecuting attorney's reference to "his" answers but that in context appears to have been an inadvertent mistake in transcription. The burden of demonstrating error and prejudice was on defendant. Missouri Digest, Criminal Law, ☞1141(2). He concedes that the record is not clear and that "[i]t is difficult to evaluate the significance of the use of the transcript at the preliminary hearing." As in State v. Owens, Mo.Sup., 391 S.W.2d 248, there is nothing in the record to indicate that by reason of the preliminary hearing the state "either sought or gained the slightest advantage or that there was any overreaching," and defendant has failed to demonstrate "the slightest prejudice or infringement of his right to a fair trial in the circuit court resulting from his lack of counsel at the preliminary hearing." 391 S.W.2d l. c. 254.

Next, defendant contends that under the rule of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, the trial court erred in leaving it to the jury to determine the voluntariness of his confession without a prior independent determination

of voluntariness by the court. The transcript of the record reveals that the court did not with unmistakable clarity find the confession to be voluntary. The State, not contending otherwise, rests its submission upon the contention that the rule of Jackson v. Denno is not to be given retroactive operation and should not be applied to this case (tried in 1946).

■ From our review of the question we have concluded that the rule of Jackson v. Denno is retroactive in operation. The case itself stands for that proposition, for in it the United States Supreme Court on June 22, 1964 applied the new rule to a set of facts which occurred in 1960 or 1961; to a conviction which had been affirmed by the highest court of New York, and after previously denying certiorari. After his conviction had thus become final Jackson filed a habeas corpus proceeding and it was on a new certiorari granted to review the order made in the habeas corpus proceeding that the high court announced its new ruling, applying it retroactively to the old conviction.[1] That it was to be considered retroactive is evidenced by remarks of two of the justices in dissenting opinions. Justice Harlan said, "I find nothing in [the court's majority] opinion to suggest that its holding will not be applied retroactively." 378 U.S., l. c. 439, 84 S.Ct., l. c. 1813, 12 L.Ed.2d, l. c. 952. Justice Black said, "Certainly if having the voluntariness of their confessions passed on only by a jury is a violation of the Fourteenth Amendment, as the Court says it is, then not only Jackson but all other state and federal prisoners already convicted under this procedure are, under our holding in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, [9 L.Ed.2d 837], entitled to release unless the States and Federal Government are still willing and able to prosecute and convict them." 378 U.S., l. c. 406, 84 S.Ct., l. c. 1796, 12 L.Ed.2d, l. c. 933.

On the same day Jackson v. Denno was decided the United States Supreme Court applied its new rule retroactively in a number of cases [2] in which final judgments of conviction had been rendered, by vacating the judgments and remanding the cases for further consideration in the light of Jackson . v. Denno. And see Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109, (November 16, 1964), in which the rule was applied retroactively to a final judgment of conviction rendered by the West Virginia Court of Appeals.

Several justices of the United States Supreme Court in discussing the subject of retroactivity of new constitutional principles in later opinions have assumed, inferred or recognized by implication that Jackson v. Denno is retroactive in operation. In Stovall v. Denno, 388 U.S. 293, 298, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1204, Justice Brennan said, "We have also

---

1. The reference in Jackson v. Denno to "cases to be tried hereafter," 378 U.S., l. c. 395, 84 S.Ct. l. c. 1791, 12 L.Ed. 2d, l. c. 926, is clearly explained in Smith v. State of Texas, 5 Cir., 395 F.2d 958, l. c. 963, as "saying in effect that while it would be the practical and desirable procedure in future cases for the judge to decide the question of voluntariness before permitting the confession to go before the jury, it was going to permit a post-conviction hearing to be held in cases already final at that time to give the judge an opportunity to decide that issue, even though the jury had already heard the confession and determined the guilt of the accused." See also Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 206 A.2d 283, 287 (fn. 12).

2. Senk v. Pennsylvania, 378 U.S. 562, 84 S.Ct. 1928, 12 L.Ed.2d 1039; Lathan v. New York, 378 U.S. 566, 84 S.Ct. 1923, 12 L.Ed.2d 1038; Lopez v. Texas, 378 U.S. 567, 84 S.Ct. 1924, 12 L.Ed.2d 1038; Oister v. Pennsylvania, 378 U.S. 568, 84 S.Ct. 1926, 12 L.Ed.2d 1038; Muschette v. United States, 378 U.S. 569, 84 S.Ct. 1927, 12 L.Ed.2d 1039; Del Hoyo v. New York, 378 U.S. 570, 84 S.Ct. 1928, 12 L.Ed.2d 1039; Pea v. United States, 378 U.S. 571, 84 S.Ct. 1929, 12 L.Ed.2d 1040; Harris v. Texas, 378 U.S. 572, 84 S.Ct. 1930, 12 L.Ed.2d 1040; Catanzaro v. New York, 378 U.S. 573, 84 S.Ct. 1931, 12 L.Ed.2d 1040; Owen v. Arizona, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041; McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed.2d 1041.

retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. See for example Jackson v. Denno, * * *." And in Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608, Jackson v. Denno was cited by Justice Clark in support of the statement that "It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule." In Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, 460, in discussing retroactivity and after referring to procedures which might clearly endanger conviction of the innocent Justice Stewart said, "The same can surely be said of the wrongful use of a coerced confession. See Jackson v. Denno, * * *." In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, after reference to cases in which retroactive effect had been given to various rules of constitutional procedure, Chief Justice Warren said, "Similarly, Jackson v. Denno * * *, which involved the right of an accused to effective exclusion of an involuntary confession from trial, was itself a collateral attack. In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' * * * We gave retroactive effect to Jackson v. Denno, supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature." In Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100, 1102, in a per curiam opinion the United States Supreme Court cited Jackson v. Denno in support of this quotation from Stovall v. Denno, supra: "We have * * retroactively applied rules of criminal pro-

cedure fashioned to correct serious flaws in the fact-finding process at trial." In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, relied upon by the State as the most recent United States Supreme Court announcement on retroactivity, Justice Stewart cited Jackson v. Denno with other "decisions which had been accorded retroactive effect." (Fn. 15)

The Second,[3] Third,[4] Fifth,[5] Eighth, Ninth,[6] and Tenth,[7] United States Circuit Courts of Appeal have held or recognized that Jackson v. Denno is retroactive in operation. The Eighth Circuit Court of Appeals in Mitchell v. Stephens, 353 F.2d 129, 144, said that " * * * there is no serious question relative to retrospective application," and ordered a state court hearing on the issue of voluntariness of a confession. In State of Minnesota ex rel. Holscher v. Tahash, 8 Cir., 364 F.2d 922, 926, 927, the same court reviewed the language of Jackson v. Denno and the previously-referred-to comment in Johnson v. New Jersey, and said that in spite of an intervening contrary holding by the Supreme Court of Minnesota (State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W.2d 3), " * * * we * * * reaffirm our conclusion expressed in Mitchell v. Stephens, supra, that Jackson v. Denno is indeed not limited to prospective operation."

Other cases in which the federal courts have ruled the same way include: Rudolph v. Holman, M.D.Ala., 236 F.Supp. 62; United States ex rel. Peterson v. McMann, N.D.N.Y., 234 F.Supp. 287, and United States ex rel. Milford v. McMann, N.D.N. Y., 231 F.Supp. 731.

State decisions which have held the rule retroactive include People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d

3. United States ex rel. Ross v. McMann, 409 F.2d 1016, 1023.

4. United States ex rel. Singer v. Myers, 384 F.2d 279; United States ex rel. Collins v. Maroney, 382 F.2d 547.

5. State of Texas v. Graves, 380 F.2d 676; Black v. Beto, 382 F.2d 758.

6. Gladden v. Unsworth, 396 F.2d 373; Ellis v. Fitzharris, 407 F.2d 799.

7. Heryford v. Parker, 396 F.2d 393, 396.

179; Commonwealth ex rel. Linde v. Maroney, 416 Pa. 331, 206 A.2d 288; Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 206 A.2d 283; Commonwealth v. Tabb, 417 Pa. 13, 207 A.2d 884; State v. Winsett, Del.Super., 230 A.2d 777; and Duguay v. State, Me.Sup., 240 A.2d 738. And see Duncan v. State, 278 Ala. 145, 176 So.2d 840, 858 [22] (1965)..

Linkletter v. Walker, Stovall v. Denno, and Desist v. United States, supra, all indicate that the criteria by which the question of retroactivity is to be determined implicate the purpose to be served by the new standards, the extent of the reliance by law enforcement authorities on the old standards, and the effect of a retroactive application of the new standards on the administration of justice. Running through the decisions as an important determinative factor is the question whether the "newly established standard goes to the very integrity of the fact finding process by which liberty is taken—as where the accused was convicted without benefit of counsel, i. e. see· Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, or upon a coerced confession, i. e. see Jackson v. Denno, * * *." Heryford v. Parker, 10 Cir., 396 F.2d 393, 396. The *foremost* factor, according to Desist v. United States, is the purpose to be served by the new constitutional rule. Tested by these standards we reach the same result announced by the overwhelming weight of authority. The admission in evidence of a coerced confession indisputably goes to the very integrity of the fact-finding process and would almost invariably result in the denial of a fair trial. Convictions in which the fact of voluntariness was submitted under a fact-finding process now revealed to have "serious flaws" are suspect. The purpose served by the new standard was to provide adequate safeguards against convictions obtained in which an involuntary or coerced confession was introduced in evidence and considered by the convicting jury; to invalidate the old procedure and afford constitutional protection against convictions based upon a jury's improper consideration of a coerced confession. The court's application of the rule retroactively in numerous cases on June 22, 1964,[2] and subsequently, indicates a purpose to extend the rule to persons whose liberty had been taken from them under the operation of the old procedure. The second criteria would lead to prospective application, because it is a historical fact that law enforcement officers had previously relied upon the old procedure from time immemorial, but this consideration is outweighed by the factor just discussed. The third criteria deserves serious consideration. A holding of retroactivity will most likely increase the burden on the courts, prosecuting officials and law enforcement agencies by adding to the number of applications for relief filed by prisoners. Balancing, however, the public interest against the gravity of the right involved, we cannot "sacrifice to mere expediency the wise restraints and constitutional safeguards which make men free and advance the quality of criminal justice." Commonwealth ex rel. Butler v. Rundle, supra, 206 A.2d, l. c. 288. As stated in United States v. Tribote, 2 Cir., 297 F.2d 598, 603, "Our concern for efficiency must not outweigh our concern for individual rights." We repeat Judge Irving R. Kaufman's observation in United States ex rel. Ross v. McMann,[3] 409 F.2d, l. c. 1028, that "A court of law whose function it is to guard against injustice cannot refuse access to those properly invoking its process merely because it must also deal with others who cry wolf too often."

Having determined that the rule of Jackson v. Denno must be applied in this case we made an order on December 22, 1969, following submission of the case, as follows:

"It appearing from our consideration of this case that the trial court admitted in evidence the confession of defendant over his objection that it was involuntary and coerced; that prior thereto the court held a hearing outside the presence of the

jury on a motion to suppress the confession on that ground; that at the conclusion of that hearing the court ruled that the question of voluntariness was for the jury to determine, and later admitted the confession in evidence before the jury; that the transcript of the record does not show with unmistakable clarity that the trial court found the confession to be voluntary under the rule of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, and that these cases are to be given retroactive effect;

"It is therefore ordered that the trial court shall provide counsel for defendant if he so desires, and after giving the state and the defendant an opportunity to present evidence in addition to that contained in the transcript of the record, and arguments with reference thereto, shall proceed to consider all the evidence before the court and make an express finding as to whether said confession was voluntary or involuntary.

"It is further ordered that the proceedings at the aforesaid hearing and the aforesaid finding shall be promptly certified to this court to be considered as a supplement to the transcript so that this court may thereafter proceed to make a determination of all the issues in this case."

On March 26, 1970 a supplemental transcript of proceedings before Hon. Douglas W. Greene, Judge of Division Two of the Circuit Court of Greene County, held pursuant to our order of December 22, 1969, and approved by the Prosecuting Attorney, Hon. John Crow, and counsel for defendant, Hon. Thom G. Field, was filed in this Court. The transcript discloses that a hearing was held before the court on February 16, 1970 at which defendant William Ernest Ussery appeared personally and was represented by his counsel; that oral testimony was given by defendant and by Floyd Robards, who was an investigator for the Springfield Police Department in 1946; and that all other officers who testified at the original trial are now deceased. The transcript of the original trial, which was still available, was introduced in evidence. The matter, taken under advisement on February 16, was ruled upon on March 5, 1970, the court finding that "all statements, admissions and confessions, both oral and written, of defendant, relating to the crime with which he was charged, and which were introduced in evidence against him at the trial of this cause on October 14–16, 1946, were voluntarily given and made by defendant, and were not obtained by means of force, threats, duress, coercion, or any other illegal means."

█ It now appears that the statements, admissions and confessions made by defendant and used against him at the original trial were voluntarily made, and that the trial court has made an independent determination on the question and has expressly so found from competent and substantial evidence. In this situation the admission of this incriminating evidence without the record of the 1946 trial disclosing a finding of voluntariness could not have been prejudicial to defendant. State v. Glenn, Mo. Sup., 429 S.W.2d 225, 238 [30].

Accordingly, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENSON, Special Judge, concur.