378 A.2d 982

COMMONWEALTH of Pennsylvania

v.

Ronald S. FRICKE, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided Oct. 6, 1977.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On July 26, 1975, Susan Locke was returning home from her job at the Herck, Sharp and Dohme Company where she had been working the 4:30 to 12:00 midnight shift. She arrived at her home which is in an apartment complex and pulled into the parking area reserved for the tenants. She alighted from her car and proceeded to walk across the

parking lot towards her apartment. On her way to her apartment, she passed by an automobile that was also parked in the lot with the engine running. Ms. Locke did not give it much thought and continued to walk to her home. Shortly after passing the automobile, she was aware of someone getting out of it and walking behind her. The individual quickly caught up to her and engaged her in a conversation regarding the whereabouts of Building "H". Ms. Locke who had stopped at this point informed the man that there was no Building "H" in the Townline Apartments, that all of the buildings were designated by numbers and possibly he had the wrong complex. He replied that he was sure that he was looking for Building "H" and she suggested that he try looking in the complex down the road where all of the buildings are designated by letters. At this point in the conversation, Ms. Locke testified that the individual looked puzzled and she turned and started to walk away. After she had taken two steps the man jumped her. Immediately she started to scream and he put his hand over her mouth to silence her. He stated that if she did not keep quiet he would kill her and she mumbled that she would not scream. At this point he attempted to put his hand under her skirt, but was having no success because in fact Ms. Locke was not wearing a skirt, but a pair of shorts with a flap that made it appear to be a skirt. As soon as he attempted this she started to scream and again he threatened to kill her if she did not keep quiet. Having failed to accomplish his less than noble desires at the present location, the individual attempted to lift Ms. Locke up and carry her to a nearby wooded area. Thinking that she might be able to get him to release his hold on her, she suggested to him that they sit there a minute and talk about the situation. This seemed to interest him so he stopped. Ms. Locke testified that at this particular place in the parking area there was a street light and the individual appeared to be content to stand under the light as they spoke to each other. He again attempted to molest her by placing his hand down her skirt, but was frustrated in his efforts due to the particular design of that article of clothing. Realizing the

futility of this line of attack, he turned his attention to placing his hand inside Ms. Locke's blouse and undoing her bra. At the moment he succeeded in unfastening her bra and placing his hand on her breast a car came into the driveway and as the lights came around he released her and ran down the walk past all of the homes. The approaching automobile stopped and Ms. Locke related to the driver what had just happened to her. The attacker's car was still parked in the lot and Ms. Locke and the man in the automobile which had just arrived on the scene drove over to the attacker's car to examine the license plate. The two went back to the man's apartment where his wife helped calm Ms. Locke and he called the police. The police arrived and what had just transpired was related to them. Shortly after taking Ms. Locke home and obtaining some additional information, the police left to investigate the case. They returned in approximately fifteen minutes and asked her if she would accompany them to a place where they had a possible suspect.

Ms. Locke was taken to another apartment complex by the police where she saw a man and was asked whether or not she could identify him. She identified the man as the same person who accosted her in the parking lot of the Townline Apartments. He was subsequently charged with attempted rape,[1] criminal attempt,[2] aggravated terroristic threats,[3] indecent assault[4] and simple assault.[5] Appellant was also charged with rape, but that charge was dismissed. Following a trial before a jury the appellant was convicted of attempted rape, indecent assault, attempted simple assault by menace and terroristic threats. Motions for new trial and arrest of judgment were timely filed and denied. Appellant was sentenced to pay the costs of prosecution and

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 301.

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 901.

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 2706.

4. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 3126.

5. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 2701.

undergo imprisonment for not less than two (2) years nor more than ten (10) years on the charge of attempted rape. Sentences on the other charges were suspended upon the payment of costs of prosecution by reason of the sentence on the charge of attempted rape. From that judgment of sentence, appeal was taken to this Court.

Prior to trial, the attorney initially representing the appellant [6] filed a motion to suppress certain evidence, among which was the evidence of the identification of the appellant in the parking lot by his home shortly after the incident. However, prior to the actual trial, newly assigned counsel withdrew the motion to suppress the evidence concerning the identification. It appears from the record that trial counsel had decided that he would withdraw the motion to suppress pursuant to an arrangement he had with the district attorney whereby appellant's prior criminal record would not be introduced to impeach the appellant's credibility. It was the intention of defense counsel to put the appellant on the stand for the purpose of presenting an alibi defense. Appellant argues on appeal that the issue of identification was so critical to the case that trial counsel's decision to withdraw it necessarily constitutes ineffective counsel.[7] On appeal, appellant is being represented by counsel different than the one who represented him during the trial. Although the issue of effectiveness of counsel was not raised in post-verdict motions we are not precluded from considering it at this time.

The effectiveness of trial counsel will therefore be considered on appeal despite the fact that the issue was not advanced in the trial court, provided that it has not been

**6.** The attorney who filed the motion to suppress was not the same attorney who represented the appellant during the trial and who withdrew the motion.

**7.** As stated above, trial counsel did file timely post-verdict motions which were denied by the lower court. Counsel did not raise the issue of the appropriateness of withdrawing the motion to suppress in those post-verdict motions. This is not unexpected since trial counsel was the same attorney who decided to withdraw the motion. It should be pointed out that trial counsel was not the attorney who filed the motion to suppress initially.

waived at any time after the termination of the representation of the defendant by the lawyer whose effectiveness has been questioned. (footnote omitted). *Commonwealth v. Carter*, 463 Pa. 310, 314, 344 A.2d 846, 848 (1975). Also see *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). The standard to be applied when considering the issue of effectiveness of counsel has been set forth in the leading case of *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). There the Pennsylvania Supreme Court stated:

> That our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis (emphasis in the original) 427 Pa. 599, 604–605, 235 A.2d 349, 352 (1967).

In the instant case, we must review the entire record in an attempt to discern whether or not trial counsel's decision to withdraw the motion to suppress had some reasonable basis designed to effectuate appellant's interest. Following such a review there are several dispositions available to us. If we are able to determine from the record that the avenue pursued by trial counsel had no legitimate purpose and was not designed to further his client's interests, then we may remand the case to the lower court and order a new trial. However, if we are able to determine from the record that trial counsel's decision had some reasonable basis designed to further the appellant's interest, then we must affirm the judgment of sentence imposed by the lower court. See *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). The third possible alternative available to us is to remand the case to the lower court for an evidentiary hearing if

from a review of the entire record we are unable to determine whether or not trial counsel's decision to withdraw the motion to suppress was a matter of trial strategy undertaken to effectuate the appellant's interest. See *Commonwealth v. Twiggs*, 440 Pa. 105, 331 A.2d 440 (1975).

■ At the inception of the trial a colloquy was held between the judge, the district attorney and trial counsel in chambers. The conversation was transcribed and consisted of the following discussion.

THE COURT: Let the record show that the Motion for Suppression will be withdrawn; is that right?

MR. GASCHO: Yes.

THE COURT: Now, the Ruling you say with reference to impeaching the credibility you are not going to bring forth or establish any prior criminal record of the defendant; is that right?

MR. MILLER: In order to impeach his credibility.

THE COURT: Now, do you have a witness, you say you are going to—

MR. GASCHO: The defendant himself is going to take the stand.

THE COURT: Make certain that the record was not going to be produced.

MR. MILLER: I will now produce it if he brings in other things and says he was never arrested, I will produce it; but I won't bring it up to impeach credibility.

It appears from the above conversation that there was an agreement between trial counsel and the district attorney that each one would forego pursuing a certain aspect of trial strategy in exchange for the other counsel's agreement to do so. The question then becomes whether trial counsel's agreement to withdraw the motion to suppress in exchange for the district attorney's agreement not to introduce appellant's prior criminal record was a decision designed to effectuate the appellant's interest.

Trial counsel intended to put the appellant on the stand in order to present an alibi defense. It was appellant's conten-

tion that he was not the individual who attacked Ms. Locke, because he was entertaining guests at his parent's home all evening and was not anywhere near the area of the incident. This was the only defense appellant was prepared to offer and needless to say his credibility was an element of extreme importance. Therefore, the introduction of appellant's prior record could have had a very damaging effect on his testimony. The record indicates that trial counsel weighed the likelihood of success of the motion to suppress and the effect on the entire proceedings of a successful motion to suppress. Had the motion to suppress been granted, the prior identification of the appellant which occurred in the parking lot shortly after the incident would have been prevented from being presented to the jury. The question confronting trial counsel was whether or not the victim could make a positive identification independent in origin from the parking lot identification. *Commonwealth v. Burton*, 452 Pa. 521, 307 A.2d 277 (1973). If the victim in this case was able to make a positive identification of independent origin, then the motion to suppress would have had little substantive value and the agreement to withdraw it in exchange for the agreement of the district attorney not to introduce appellant's prior record would have been a proper element of trial strategy.

The record reflects that the victim did not depend on the viewing made in the parking lot of the appellant's home as sole means of identifying him. She testified that when he initially approached her inquiring about the location of Building "H" she informed him there was no such building and he had a puzzled look on his face. Later she testified that they stopped under a street light when she told him that they should talk about this "thing" and at that time there was ample lighting by which to view him. She also testified on direct examination as follows:

A. I am sorry, there is something I forgot. When he was holding me like he had his face to mine and I kept trying to turn at him, I thought if I come out of this alive I want to know, I want to be able to identify

him and even though I talked to him, you don't always study somebody when you talk to them, and so I kept turning and he said I don't want you to look at me, I don't want you to look at me. But I did get a good look and I tried to pull his glasses off, he bruised my lip and broke it open, he bruised my nose somewhat, but I never did lose my glasses and I did get a good look.

It is obvious that Ms. Locke was sure of her identification of the appellant and that the district attorney would not find it difficult to establish that her identification had an origin independent of the parking lot viewing which was alleged to be of questionable validity. Therefore, a review of the record indicates that trial counsel had a reasonable basis for his decision to withdraw the motion to suppress in exchange for the district attorney's agreement not to introduce the appellant's prior criminal record for the purposes of impeaching his testimony. Under the standards enumerated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), we are not prepared to hold that counsel was ineffective.

Judgment of sentence affirmed.

HOFFMAN and SPAETH, JJ., dissent based on *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975).