## Harleysville Mutual Insurance Co. v. Yocolano

*William J. Ivill,* for plaintiff.
*Richard J. Federowicz,* for defendant.
*Michael J. Boyle,* for additional defendant.

WETTICK, *J.*, October 19, 1978—Harleysville Mutual Insurance Company (Harleysville) brought this action against Richard Yocolano (Yocolano) under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq., to recover payments made to Divine Providence Hospital (hospital) for services rendered to Yocolano. Yocolano filed a petition for an extension of time in which to join the hospital as an additional defendant pursuant to Pa.R.C.P. 2253. While Harleysville has no objection to the joinder, the hospital opposes the petition on the ground that Yocolano has failed to assert any ground on which the hospital may be liable to either Harleysville or Yocolano. Pa.R.C.P. 2253 provides that a late joinder shall be allowed by the court only "upon good cause shown." "Upon good cause shown" requires that facts showing the existence of a valid claim against the proposed additional defendant be alleged. See International Telephone and Telegraph Corp. v. Philadelphia Electric Co., 250 Pa. Superior Ct. 370, 378 A. 2d 986 (1977), and cases cited therein; 4A Anderson Pa. Civ. Proc. §2253.14; 8 Goodrich-Amram 2d §2253:3.1.

The facts are not in dispute. Yocolano was the owner and operator of an automobile which was involved in an accident on August 6, 1976. He was injured in this accident and hospitalized at Divine Providence Hospital for approximately two months.

At the time of the accident, Yocolano was categorically eligible for medical assistance under the provisions of the Pennsylvania Medical Assistance Program: Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §441.1 et seq. Consequently, on August 18, 1976, the hospital submitted a claim

under the medical assistance program to the Department of Public Welfare. On September 28, 1976, the department authorized full payment for inpatient hospitalization care for 60 days "subject to damage claim."

The hospital, however, never requested payment from the Department of Public Welfare pursuant to this authorization. Instead, the hospital made a claim on behalf of Yocolano under the Pennsylvania No-fault Motor Vehicle Insurance Act and Harleysville made payments of $7,905.24 under the assigned claims plan: 40 P.S. §1009.108. Subsequently, Harleysville brought this action against Yocolano to recover the amount of its payment to the hospital. Yocolano seeks to join the hospital on the ground that the hospital is responsible for this claim because it breached its duty to Yocolano to seek payment under the medical assistance program.

## I.

At the time of the accident, Yocolano was an uninsured driver. Pennsylvania's No-fault Motor Vehicle Insurance Act requires insurance carriers to participate in an assigned claims plan under which the carriers provide benefits to persons who suffer injuries arising out of the use of an automobile which is not insured: 40 P.S. §1009.108. The act provides that a carrier who makes payments under the assigned claims plan may recover all benefits paid from the owner of the uninsured automobile and that the owner's failure to make such payments shall be grounds for suspension and revocation of his or her motor vehicle registration and operator's license: 40 P.S. §1009.501. Thus in making a claim

for benefits on Yocolano's behalf under the assigned claims plan, the hospital subjected Yocolano to the provisions of the act which require Yocolano, as an uninsured motorist, to reimburse Harleysville for payments made on Yocolano's behalf.

The medical assistance program, on the other hand, imposes no obligation on a recipient to make reimbursement payments for benefits provided through medical assistance. Yocolano contends that the medical assistance program would have honored the hospital's claim for Yocolano's medical expenses, in which case he would have had no responsibility to provide reimbursement for these benefits. And, according to Yocolano, it is the hospital's failure to seek payments through the program that was most beneficial to Yocolano that exposes the hospital to liability in this action.

## II.

Neither the Federal nor the state medical assistance legislation and the accompanying regulations clearly set forth the responsibilities of the service provider and the recipient for preparing and submitting applications to obtain medical assistance coverage for services provided to an eligible medical assistance recipient.[1] In practice, however, it is

---

1. See, however, DPW-OMP-MA Manual §9421.412 which provides that "it is the responsibility of the hospital to identify those patients who need medical assistance to pay for their hospital care and to help the patients take the necessary steps to make application for benefits." Also see Mount Sinai Hospital v. Kornegay, 347 N.Y.S. 2d 807, 809 (1973), where the court

usually the hospital—and not the patient—who assumes responsibility for preparing and submitting applications for medical assistance. And where the hospital assumes this responsibility, it must act in the recipient's best interests.

Under established tort law, a hospital must exercise the care and judgment of a reasonable person on behalf of its patients and is liable for the failure of its agents and employes to meet this standard of care. See Grubb v. Albert Einstein Medical Center, _____ Pa. Superior Ct. _____, 387 A. 2d 480 (1978), and cases cited therein. We extend this duty to responsibilities imposed and/or assumed by a hospital for securing payments for medical services on a patient's behalf.

Thus in the present case, Yocolano is entitled to show that the hospital assumed the responsibility for completing the necessary forms for securing payment of Yocolano's medical expenses and that the decision to seek payment through the no-fault act, rather than through medical assistance, was made by the hospital and not Yocolano. And assuming that Yocolano can show that the hospital made

---

said: "Although the responsibilities of the hospital are not defined with adequate clarity in the statute or accompanying regulations, I am satisfied that the situation set up by the statutory pattern imposes on the hospital the duty to ascertain the possible eligibility of the patient or family, give adequate directions and information, and maintain a sufficient continuing interest to insure that eligible patients or family file the required applications and that appropriate action is taken. These responsibilities follow inexorably from the obvious reality that specialized hospital personnel are almost certain to be far more knowledgeable about the legal requirements than the average patient and also to have an ongoing relationship with the Department that permits ready correction of misunderstandings or points of confusion."

this decision, the hospital becomes liable to Yocolano for any increased liability to which Yocolano is subject because of the hospital's decision to seek payment through the no-fault act.

### III.

The hospital argues that medical assistance coverage was not available for Yocolano's treatment and care because of the availability of the no-fault benefits.

In support of this argument, the hospital relies on regulations of the Pennsylvania Medical Assistance Program which state that the state program of medical care only supplements other programs of medical care:[2] 55 Pa. Code §§177.21(b), 175.71(g). Both the hospital and the county assistance office have the responsibility to determine whether or not a medical assistance recipient has resources other than medical assistance available to meet the costs of the recipient's medical care: DPW-OMP-MA Manual §9421.4211. Also where it is determined that a third party may be liable for the hospital costs, the hospital may obtain medical assistance payments on the patient's behalf and the welfare department will look to this third party for reimbursement of the payments made: 55 Pa. Code §177.23(6); DPW-OMP-MA Manual §9421.413.

The hospital argues that Yocolano's no-fault

2. Under the Federal scheme, the medical assistance program is intended only to supplement other existing resources for medical services and a state which participates in the medical assistance program may not provide medical assistance payments where a third party may be liable for the recipient's medical care and services. See 42 U.S.C.A. §1396(a)(25), 42 C.F.R. §433.135 (1978).

coverage is an existing resource which bars Yocolano's medical assistance eligibility and, consequently, that the hospital's failure to submit its claim to the medical assistance program did not injure Yocolano. In support of this contention, the hospital relies on a letter, dated August 13, 1975, from the Pennsylvania Attorney General which concludes that medical assistance payments shall only supplement benefits recoverable under the no-fault assigned claims plan.

Yocolano rejects this construction of the medical assistance legislation and accompanying rules and regulations. The purpose of the medical assistance program is to provide hospital medical services at no cost to persons who lack the financial ability to pay for such services. Thus Yocolano contends that the no-fault benefits under an assigned claims plan shall not be treated as an existing resource for payment of the medical assistance benefits under the medical assistance plan because the ultimate burden for paying such benefits rests with the person whom the medical assistance program intended to receive medical care at no cost.

The issue of whether a medical assistance recipient is rendered ineligible where a third party with the right to seek reimbursement from the recipient will pay the hospital claims has not been resolved. And by not seeking medical assistance benefits for Yocolano's medical care, the hospital has deprived Yocolano of the opportunity to raise his medical assistance claim.

The hospital also argues that it did not submit a claim for medical assistance because the welfare department agreed only to make payment "subject to damage claim" and thus submission of

Yocolano's expenses to the Department of Public Welfare, without first seeking no-fault benefits, would have been a futile exercise.[3]

We reject this argument. It is far from clear that the "subject to damage claim" condition required the hospital to seek no-fault benefits before submitting its claim to the welfare department. It is more likely that the welfare department meant only to advise the hospital that the medical assistance payments would not be made if the hospital had taken the assignment of any claims which Yocolano had against third parties. See 55 Pa. Code §177.83(c)(5).

Because we rule that Yocolano's allegations that the hospital exercised unreasonable care in failing to seek reimbursement under the medical assistance act set forth a valid claim, we grant Yocolano's petition for an extension of time in which to join the hospital.

## ORDER

And now, October 19, 1978, it is hereby ordered that Richard Yocolano is granted leave to join Divine Providence Hospital as an additional defendant. Joinder shall be by complaint which shall be filed not later than 15 days after receipt of this order of court.

---

3. Yocolano questions the hospital's claim that it sought payment through the no-fault act rather than through medical assistance for this reason. According to Yocolano, payments made through medical assistance would have been in a lesser amount and, thus, the hospital looked to the no-fault act rather than the medical assistance program to promote its financial interests.