J-A05029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :                  PENNSYLVANIA
                                 :
                v.               :
                                 :
                                 :
                                 :
MICHAEL JOSEPH GROVE             :
                                 :
                Appellant        :     No. 281 WDA 2018

Appeal from the PCRA Order February 6, 2018
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001264-2012

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                          **FILED JUNE 28, 2019**

Appellant, Michael Joseph Grove, appeals from the order denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On April 14, 2012, Appellant committed a sexual assault upon Victim, G.R., on the campus of California University of Pennsylvania.  The assault occurred in a locked bathroom at a social event following a rugby tournament.  Appellant had been serving as a referee for a rugby tournament and Victim was a participant.  At the time of the incident, Victim was eighteen years old and Appellant was in his late twenties.

On August 8, 2012, a criminal information was filed charging Appellant with involuntary deviate sexual intercourse ("IDSI"), sexual assault, indecent

assault, and simple assault.[1]  On December 10, 2013, a jury convicted Appellant of sexual assault and indecent assault, and acquitted him of the charges of IDSI and simple assault.  On July 3, 2014, the trial court sentenced Appellant to serve an aggregate term of incarceration of seven and one-half to fifteen years.  This Court affirmed Appellant's judgment of sentence on August 12, 2016, and our Supreme Court denied his petition for allowance of appeal on January 10, 2017.  **Commonwealth v. Grove**, 1183 WDA 2014, 156 A.3d 336 (Pa. Super. 2016) (unpublished memorandum), *appeal denied*, 165 A.3d 872 (Pa. 2017).

Appellant filed this timely PCRA petition on April 20, 2017.  On November 8, 2017, the Commonwealth filed a response.  On January 12, 2018, the PCRA court filed notice of its intent to dismiss pursuant to Pa.R.Crim.P. 907.  The PCRA court entered an order dismissing the petition on February 5, 2018.  This timely appeal followed.  Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.[2]

Appellant presents the following issues for our review:

I. Did the PCRA court err in dismissing Appellant's petition for post-conviction relief without an evidentiary hearing, when trial counsel was ineffective for advising Appellant not to testify at trial based on the inaccurate belief that such testimony would open the door to Appellant's prior conviction for sexual assault?

---

[1] 18 Pa.C.S. §§ 3121, 3124.1, 3126, and 2701, respectively.

[2] For a more detailed recitation of the factual and procedural history of this case, we direct the reader to pages one through thirteen of the opinion of the PCRA court filed July 10, 2018.

II. Did the PCRA court err in dismissing Appellant's petition for post-conviction relief without an evidentiary hearing, when trial counsel was ineffective for not requesting a cautionary instruction regarding other wrong acts by Appellant?

Appellant's Brief at 4 (full capitalization omitted).

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Moreover, a PCRA court may decline to hold a hearing on the petition if it determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super. 2001). A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding

that there were no genuine issues of material fact and denying relief without an evidentiary hearing. *Id.*

Appellant's two issues challenge the effective assistance of prior counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001).

We have explained that counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but-for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

We have reviewed the briefs of the parties, the certified record before us on appeal, and the PCRA court opinion filed on July 10, 2018. It is our conclusion that the PCRA court's opinion adequately and accurately addresses

each of the challenges to the effective assistance of trial counsel presented by Appellant and properly concluded that they lack merit. Specifically, the PCRA court properly concluded that trial counsel was not ineffective because there is no merit to the underlying claim that trial counsel deprived Appellant of his right to testify. PCRA Court Opinion, 7/10/18, at 15-20. In addition, the PCRA court correctly determined that trial counsel was not ineffective for not requesting a cautionary jury instruction on alleged prior bad acts, which pertained to Appellant's behavior at the rugby event. *Id*. at 20-22. Consequently, Appellant's contrary arguments lack merit. Accordingly, we affirm on the basis of the PCRA court's opinion and adopt its analysis as our own.[3]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2019

---

[3] The parties are directed to attach a redacted copy of that opinion in the event of further proceedings in this matter.

- 6 -

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.

No.     1264-2012
        281 WDA 2018

MICHAEL JOSEPH GROVE,

Defendant.

## Opinion of Court

This matter comes before the Superior Court upon the Defendant's appeal from the trial court's order dated February 5, 2018, denying his Post Conviction Relief Act (PCRA) petition.

On February 23, 2018, Robert E. Mielnicki, Esquire, acting on behalf of Michael Grove (hereinafter "Defendant"), filed a timely Notice of Appeal to the Superior Court from the denial of Defendant's PCRA petition.

## Factual History

This case and the criminal charges arise out of a sexual assault which occurred on April 14, 2012 on the campus of California University of Pennsylvania, located in Washington County. During trial, the jury heard evidence that on April 14, 2012, G.    ₁ R      ₎ (hereinafter referred to as "Victim") was participating in a social event at an on campus residence following California University of Pennsylvania's annual alumni rugby game when she was sexually

1

assaulted by the Defendant. [1] At the time of the incident, the Victim was a freshman at California University of Pennsylvania.

On the morning of April 14, 2012, the Victim was participating in the alumni rugby event at the University. During the course of the rugby match, the Victim encountered the Defendant, who was serving as a referee. The Victim testified that there was alcohol present at the game, but she did not imbibe any alcohol.

After the matches concluded, members of the team and the alumni, including the Victim, returned to a residence on campus that was referred to as the "rugby house." [2] The Victim did not reside at the rugby house. The Victim and some fellow teammates then attended a social event held for the alumni game at McMonagle's Pub nearby.

The Victim testified that alcohol was served at the pub, but the Victim did not drink any alcohol. The Victim testified she was given a wristband by the pub to indicate that she was not yet twenty-one (21) years of age. The Victim testified that she again encountered the Defendant at the pub. The Victim explained that although she did not know the Defendant by name, when she saw the Defendant at the pub she recognized him as the rugby referee and they acknowledged one another by nodding at each other. She further testified that as she proceeded to walk by Defendant, he tapped the Victim on her buttock. [3]

Later that evening, the Victim joined other members of the male and female rugby teams and left the pub and returned to the rugby house. While at the rugby house, the Victim again encountered the Defendant as she stood in the kitchen waiting to use the bathroom. [4]

---

[1] TT 24 (The numerals following the initials TT refer to the official transcript of the jury trial proceedings conducted from December 9, 2013, through December 10, 2013.)
[2] TT 24-31; 187-189.
[3] TT 33-38; 190; 310-312.
[4] TT 38; 44-49; 114; 191-195.

2

The Victim made conversation with the Defendant until the bathroom became available. During the conversation, the Victim commented to Defendant that he did a poor job of refereeing the rugby match. At that point, the Defendant grabbed the Victim's arm and pulled her close to him and he said to her, "let me make it up to you." The Victim tried pushing the Defendant away, but he continued to pull her close to him, repeating "let me make it up to you." The Victim testified that the actions made her uncomfortable and she tried telling the Defendant she was gay to turn him off.[5]

The bathroom door opened and the Defendant quickly dropped his grasp of the Victim. The Victim's friend, R ' l S , exited the bathroom. After Ms. S exited the kitchen, the Victim testified that she was immediately forcibly drug into the bathroom by the Defendant. The Victim further testified that the bathroom door was locked behind her. The Victim indicated that the incident happened very quickly and she did not yell for help. The Victim also indicated that there was no one in the kitchen to hear her cries for help. She indicated that the television and music were being played loudly from the other room and she did not believe anyone would hear her.[6]

The Victim testified that after the bathroom door was shut and locked behind her, the Defendant began kissing her face. The Victim testified that she attempted to push away from the Defendant. However, the Defendant began touching her vaginal area. Victim indicated she had spandex on under her sweatpants, so the Defendant's hand, despite his efforts, did not come into skin contact with her vaginal area. The Victim continued to try to push away, but the Defendant kept pulling her close to him with one hand. The Victim further testified that the Defendant continuously attempted to force the Victim to touch and stroke his penis. The Defendant then

---

[5] TT 49-53; 115-122.
[6] TT 53-57; 122-135; 214-216.

3

grabbed the Victim's pigtail and tried shoving his penis into her mouth. However, the Victim testified that she kept her mouth shut, so the Defendant's penis touched her lips and teeth, but did not pass that point into her mouth. Testimony demonstrated that when the Defendant was unsuccessful in putting his penis into Victim's mouth, he began kissing her neck and ear.[7]

The Victim testified that during the assault she began trying to find her cell phone to reach out for help. The Victim found her phone and texted her friend, K S . The Victim had exchanged text messages with Ms. S earlier in the day, so her name was at the top of her text message list. Testimony demonstrated that the Victim held her phone away from her body for fear that the Defendant would see her. Therefore, the Victim was blindly attempting to text message Ms. S "Help." However, the Victim's first attempted text message to Ms. S spelled out the word "hall." Following the word "hall," the Victim typed "help plz."

Ms. S testified that she was sitting in a bedroom with A D when she received a text message from the Victim. Ms. S responded to the message and inquired where the Victim was located. The Victim responded via text message that she was in the bathroom. Soon thereafter, Ms. S began knocking on the door and attempting to enter the locked bathroom.[8]

As soon as Ms. S began pounding on the bathroom door, the Defendant threw the Victim off of him and pushed her into the corner. Ms. S then yelled out "let me in or I'm going to have to break in." Ms. Schleicher testified that she ran to get a butter knife to try to

---

[7] TT 57-62; 83-85; 136; 141-143.
[8] TT 62; 68-74; 195; 259; 293-295; 314-315.

4

unlock the door. The Defendant then proceeded to unlock the door and exit. As Ms. S was retrieving the butter knife, the door opened and the Defendant was standing in the doorway.[9]

The Victim testified she remained on the bathroom floor and began hysterically crying. Ms. S .: consoled her. The Victim then texted her boyfriend, J( _ A; , who came to the house. Testimony demonstrated that at some time after Ms. S. · left the bedroom, the Defendant came in and began talking to A _ D . Ms. D: testified that the Defendant stated "someone should go get that girl, she is pretty drunk." As Victim was exiting the bathroom, the Victim saw the Defendant sitting on a bed in a bedroom talking to Ms. Γ . The Victim then informed Mr. A; and Ms. S( that the Defendant had assaulted her. Ms. S. then began yelling for Defendant to get out of the house.[10]

The Victim remained at the house as the police were called to the scene. Officer Timothy Sheehan, of the California Borough Police Department, arrived at the scene and testified that when he arrived the Victim was crying hysterically. He took a verbal statement from the Victim. Officer Sheehan further testified that the Victim came to the police station the next day or so and gave a written statement. Based on the information received, Officer Sheehan filed criminal charges against the Defendant.[11]

### Procedural History

On August 8, 2012, the Washington County District Attorney's Office filed a criminal information charging the Defendant as follows:

**Count 1:** IDSI Forcible Compulsion—18 Pa.C.S.A. § 3123(a)(1)—Felony of the 1st Degree

**Count 2:** Sexual Assault—18 Pa.C.S.A. § 3214.1—Felony of the 2nd Degree

---

[9] TT 74-75; 195-197; 216; 222-223; 315-316.

[10] TT 76-80; 198-204; 261; 265; 299-301; 316-317; 333-337; 355-360; 375-376;

[11] TT 81; 86; 205-207; 266; 380-385;

5

**Count 3:** Indecent Assault Forcible Compulsion—18 Pa.C.S.A. § 3126(a)(2)—Misdemeanor of the 1st Degree

**Count 4:** Simple Assault—18 Pa.C.S.A. 2701(a)(1)—Misdemeanor of the 2nd Degree.[12]

A jury trial was conducted on December 9th and 10th of 2013 after which the jury found the Defendant guilty of Sexual Assault and Indecent Assault by Forcible Compulsion or Threat of Forcible Compulsion.[13] On December 10, 2013, the trial court revoked the Defendant's bond and remanded him to the Washington County Correctional Facility.[14] Additionally, the trial court ordered the Washington County Adult Probation Office to conduct a pre-sentence investigation and the Defendant to be assessed by the Pennsylvania Sexual Offenders Assessment Board to determine if he was a sexually violent predator.[15]

On July 3, 2014, the trial court sentenced the Defendant as follows:

> The Pennsylvania Sexual Offenders Assessment Board did not assess the Defendant as a sexually violent predator and neither party is seeking additional findings in that regard.

> The Court finds several aggravating circumstances:

> The Defendant was a Megan's Law registered offender at the time of the commission of the offense; furthermore, the Court finds that the Defendant was acting as an official, as a referee during the commission of the offenses and in that capacity was standing in a position of authority over the participants in the rugby tournament, particularly the college student participants, including the victim, the nature of the Defendant's prior offense, although it is reflected in the prior record score, it was a sexual offense involving a minor child, 7 years younger than the Defendant; the victim of these offenses was also 7 years younger than the Defendant; the Court finds there was alcohol involved on the Defendant's part; and finally, the Court finds as an aggravating circumstance the violent nature of the offense.

---

[12] Docket Entry 8.
[13] Docket Entry 14.
[14] *Id.*
[15] *Id.*

With respect to whether the Defendant is subject to the mandatory penalty under section 9718.2 (a) of the Sentencing Code, there is no question that the Defendant has been a Megan's Law registrant for 10 years pursuant to his plea of April 26, 2005, which places the Defendant in a category of a recidivist offender under that section, which would mandate a minimum sentence of 25 years. However, the Defendant disputes that his prior conviction required Megan's Law registration and disputes that he is subject to the mandatory sentence.

The standard for the Court's determination is a preponderance of the evidence. The Court finds although it was not a mistake, that it was clear that the Defendant entered a plea to Unlawful Contact with Minors, Indecent Assault and Corruption of Minors, the docket record is not clear. The Court is constrained to resolve the ambiguity in the Defendant's favor, and therefore holds the mandatory minimum does not apply. However, as a result of this and the aggravating factors set forth above, the Court finds that it is appropriate to depart from the sentencing guidelines in this case.

Therefore, the Court sentences the Defendant in accordance with the statutory maximums, which although severe and outside the sentencing guidelines, are less than half of the mandatory penalty the Defendant was facing.

Based on the foregoing, the jury having found the Defendant guilty on December 10, 2013, the Court sentences the Defendant on the charge of Sexual Assault, § 3124.1 of the Criminal Code, a felony of the second degree, to pay the costs of prosecution, pay restitution to Geena Romero in the amount of $5,459.84 before paying any fines and costs, and be confined to an appropriate state correctional institution for no less than 5 years and no more than 10 years. The Court recommends that the Defendant be treated as a sexual offender, that he be assessed for alcohol and other drug addiction and be treated accordingly, and that he receive perpetrator's counseling. The Defendant's parole shall be at the discretion of the Pennsylvania Board of Probation and Parole. Special conditions of the Defendant's parole are that he is now a lifetime Megan's Law registrant and must register with the Pennsylvania State Police for life, with notice to the community in accordance with 42 Pa.C.S.A. § 9979 (a)(3), and follow all requirements thereof. A further condition of the Defendant's sentence is that he have no contact with Geena Romero or her family or any of the witnesses in the trial and that he be excluded from the California University campuses.

.7

> On the charge of Indecent Assault by Forcible Compulsion
> or Threat of Forcible Compulsion, § 3126 (a)(2) of the Criminal
> Code, a misdemeanor of the first degree, Defendant is sentenced to
> be confined in an appropriate state correctional institution for a
> period of no less than 2 ½ and no more than 5 years. This sentence
> shall run consecutively to the Sexual Assault and under the same
> terms and conditions.

> The total sentence is 7 ½ to 15 years. The Defendant shall
> be given credit for time served since December 10, 2013.[16]

On July 22, 2014, Attorney Shrager filed a notice of appeal to the Superior Court from the Defendant's judgment of sentence dated July 3, 2014.[17] On August 1, 2014, the trial court ordered the Defendant to file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days of the order.[18] Attorney Shrager requested two extensions for filing the concise statement which were granted by the trial court setting the filing date for no later than November 26, 2014.[19] On November 5, 2014, Robert Mielnicki, Esquire entered his appearance on behalf of the Defendant due to the untimely passing of Attorney Shrager.[20] On November 20, 2014, Attorney Mielnicki filed a concise statement on behalf of the Defendant raising the following issues:

1. "The court erred in overruling a defense objection to testimony from Commonwealth witness and the alleged victim, G⸱ R⸱ , regarding that fact that she was once a pharmacy student at California University, participated in rugby, but could not return to school after the spring of 2013. Such testimony was not relevant to any issue material to the charges against Defendant, and the probative value of such evidence/testimony was outweighed by the danger or risk of unfair prejudice.

---

[16] Docket Entry 19.
[17] Docket Entry 20.
[18] Docket Entry 23.
[19] Docket Entries 25 and 27.
[20] Docket Entry 29.

8

2. The court erred in denying a defense motion for mistrial when the Commonwealth elicited testimony from Commonwealth witnesses and alleged victim, G     R    ', that Defendant was known as 'Chester.' Counsel understands that such reference would not automatically suggest that such was short for 'Chester the Molester.'

3. The court erred in permitting testimony regarding and introduction of a photograph of a text message from Commonwealth witness and alleged victim, C     R    , when such was not provided to Defendant in discovery.

4. The court erred in sustaining an objection to defense questioning of Commonwealth witness and alleged victim, G     R    ', by stating 'Sustained, ladies and gentlemen, as I said, the questions are not evidence. Only the answers to the questions are evidence and although attorneys have different styles of questioning, lets not suggest, in our questions, suggest something that we know didn't happen.' Such commentary painted defense counsel in a bad light.

5. The court erred in sustaining an objection to defense questioning of Commonwealth witness and alleged victim G     R    , by stating: 'I'm sure what makes sense today and what made sense than are two different things.'

6. The court erred in sustaining a Commonwealth objection to defense questioning of Commonwealth witness, and alleged victim G.     R.      about whether she believed that her boyfriend, J    ', would have been upset if she had been with another man. Such was not speculation but a question about what she believed and thus relevant motive. In fact, to the extent that current counsel can decipher Attorney Shrager's defense, it seemed to be that R     needed to cover up a consensual encounter with Defendant, with a story

9

so as to not upset J͟ or be embarrassed. Attorney Shrager, for reasons unknown, did not order closing arguments. Current counsel is attempting to obtain such.

7. The court erred in permitting Commonwealth witness, and alleged victim G͟ R͟ , to read into evidence her prior statement to police. Such was not a prior consistent statement and contained reference to other inappropriate and criminal conduct by Defendant 'touching the buttocks of other girls.'

8. The court erred in permitting an inappropriate re-redirect of Commonwealth witness and alleged victim G͟ . R͟ , which became a series of leading questions by the Commonwealth. This re-redirect was not even questioning, but basically argument by the Commonwealth, followed by 'yes' or 'yeah' from the witness.

9. The court erred in overruling an objection to Commonwealth questioning of Commonwealth witness, R͟ ͟ ͟S͟ , which was leading and beyond the scope of cross examination. The Commonwealth redirects and re-redirects of its own witness became argument as opposed to inquisitive. Numerous questions from the Commonwealth of its own witnesses were of the 'is that correct' variety.

10. The court erred in sustaining a Commonwealth objection to defense questioning of Commonwealth witness, R͟ . S͟ , regarding 'walk of shame.' While the question could have been presented in a more professional way, such was appropriate where S͟ described the conduct of the alleged victim following her alleged encounter with Defendant. In other words, S͟ was permitted to testify about R͟ 's behavior after her encounter with Defendant. The relevance of such had to be that it was consistent with being sexually assaulted. This, however, was S͟ 's opinion and Defendant should have been permitted, even though it tried to do such in an

10

unprofessional way, to explore with the witness that someone could exhibit similar symptoms for other reasons.

11. The court erred when it denied a defense motion for mistrial when Commonwealth witness, A____ D_____, referred to Defendant as 'Chester.' This was the second time and Commonwealth elicited such.

12. The court erred in overruling a defense objection to Commonwealth questioning of Commonwealth witness, A____ D____, regarding the fact that Defendant was suspended as a rugby referee. Such was irrelevant and the probative value of such was outweighed by the danger of unfair prejudice.

13. The court erred in sustaining a Commonwealth objection to defense questioning of Commonwealth witness, A____ D____, regarding underage drinking by participants in the rugby event, where the alleged victim denied drinking at such event, in part, due to the fact that she was underage.

14. The court erred in permitting the testimony of Commonwealth witness, M____ J____, that Defendant was 'going around...trying to pick up some girls, but grabbing butts as well.' Such was uncharged criminal conduct, the Commonwealth provided no notice and was extremely prejudicial.

15. The court erred in permitting Commonwealth witness, J____ A____, to testify that the alleged victim, G____ R____, was eventually not the same as she was before the alleged sexual assault. The court stated that an injury was an element of simple assault, but such does not actually require an actual injury, but an attempt, and the injury must be bodily injury.

11

16. The court erred in sustaining a Commonwealth objection to introduction by the defense of a tweet by G␣ R␣ ᵢ about smoking kush and drinking alcohol, during cross-examination of Commonwealth witness, J␣ A

17. The court erred in overruling a defense objection to Commonwealth witness, Officer Sheehan's testimony as to G␣ R␣ 's statement to him. The Court notes Attorney Shrager's continuing objection, although new counsel cannot find the actual objection. Reading the statement twice was prejudicial to Defendant."[21]

On June 9, 2015, the trial court filed its opinion submitting that the Defendant's judgment of sentence should be affirmed.[22] On August 12, 2016, the Superior Court affirmed the Defendant's judgment of sentence.[23] On September 12, 2016, the Defendant petitioned for allowance of appeal before the Supreme Court of Pennsylvania which was denied by order dated January 10, 2017.[24]

On April 20, 2017, Attorney Mielnicki filed a PCRA petition on behalf of the Defendant.[25] On June 6, 2017, the trial court ordered the Commonwealth to file a response within thirty (30) days of the order.[26] On August 24, 2017, the trial court granted a motion to enforce the Commonwealth to file a response ordering the Commonwealth to file a response within 30 days of the order.[27] On November 8, 2017, the Commonwealth filed a response to Defendant's PCRA petition.[28] On January 12, 2018, the trial court filed notice that Defendant's

---

[21] Docket Entry 31.
[22] Docket Entry 34.
[23] Docket Entry 35.
[24] *Id.*
[25] Docket Entry 36.
[26] Docket Entry 37.
[27] Docket Entry 39.
[28] Docket Entry 42.

12

PCRA petition was to be dismissed in twenty (20) days from the date of the notice.[29] On February 5, 2018, the trial court dismissed the Defendant's PCRA petition.[30] On February 23, 2018, Attorney Mielnicki filed Defendant's notice of appeal from the trial court's dismissal order dated February 5, 2018.[31] On March 19, 2018, the trial court ordered Defendant to file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days of the date of the order.[32]

On April 4, 2018, Attorney Mielnicki filed Defendant's concise statement alleging eleven (11) claims of error; however those claims can be condensed into the following issues:

1. "This Honorable Court erred in dismissing Defendant's Petition for Post-Conviction relief, based on his claim that Attorney Shrager advised him not to testify, since such would automatically open the door to Defendant's prior conviction for sexual assault, a 2004 conviction for Indecent Assault. This was erroneous advice that constituted the ineffective assistance of counsel, which led the Defendant to decide not to testify, and thus prejudiced him in a case that largely came down to the word of the alleged victim."

2. "This Honorable Court erred in dismissing Defendant's Petition for Post-Conviction relief, based on his claim that Attorney Shrager was ineffective in not requesting a cautionary instruction regarding other bad or wrong acts by Defendant, that this Honorable Court ruled were admissible, without an evidentiary hearing."[33]

---

[29] Docket Entry 43.

[30] Docket Entry 44.

[31] Docket Entry 45.

[32] Docket Entry 46.

[33] Docket Entry 47. The Defendant's concise statement raises eleven (11) separate points, but the entirety of the concise statement is meant to raise two separate claims of ineffective assistance of counsel. The two issues cited above reflect all of the issues raised in the Defendant's PCRA petition.

13

## Legal Analysis

Defendant's concise statement raises two issues on appeal, but the trial court finds that the Defendant is not entitled to relief on either of those claims.

The PCRA provides in pertinent part that:

**(a) General rule.** – To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

\* \* \*

(2) That the conviction or sentence resulted from one or more of the following:

(i) a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

\* \* \*

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction

(3) That the allegation of error has not been previously litigated or waived.

42 Pa.C.S. § 9543.

14

Defendant's concise statement raises two allegations of ineffective assistance of counsel. Pennsylvania employs a three-prong test (the "Pierce" test), derived from the guidelines espoused by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate ineffective assistance of counsel claims. *Commonwealth v. Pierce*, 498 A.2d 423 (Pa. Super. 1985), aff'd, 527 A.2d 973 (Pa. 1987). Specifically, to be entitled to post-conviction relief, a defendant must demonstrate that:

> (1) the claim underlying the ineffectiveness claim has arguable merit;
>
> (2) counsel's actions lacked any reasonable basis; and
>
> (3) counsel's actions resulted in prejudice to [the defendant].

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). It is well-settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the Strickland test, the court may proceed to that element first. *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011) *(citing Strickland, supra; Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998)).

The first allegation raised by PCRA counsel is that trial counsel was ineffective for giving the Defendant erroneous advice which caused the Defendant not to testify. Defendant's argument fails under the first prong of *Pierce* as it lacks merit.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or *that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.*

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000)(emphasis added).

In the instant case, the following colloquy was conducted by the trial court on December 10, 2013:

THE COURT: You also understand your right to take the witness stand and testify?

THE DEFENDANT: Yes, I do.

THE COURT: You went over that with Mr. Shrager?

THE DEFENDANT: Yes, I have.

THE COURT: And you also have the right not to testify and remain silent, that's your constitutional right?

THE DEFENDANT: Yes.

THE COURT: And you have gone over, with Mr. Shrager, whether you should take the stand and testify or not?

THE DEFENDANT: Yes.

THE COURT: And you and your counsel made that decision not to testify?

THE DEFENDANT: Yes, I understand.[34]

--------

ATTORNEY SHRAGER: Michael, we have spent substantial time talking about your absolute right, as Judge DiSalle said, to testify or not testify; is that right?

THE DEFENDANT: Correct.

ATTORNEY SHRAGER: And you've talked about it with me, in fact, as recently as Sunday, prior to jury instruction on Monday; is that right?

THE DEFENDANT: Yes.

ATTORNEY SHRAGER: You were in my office on Sunday afternoon?

THE DEFENDANT: Yes.

---

[34] Trial Transcript, Page 351 (December 10, 2013).

16

ATTORNEY SHRAGER: You've talked about this with your family?

THE DEFENDANT: Yes.

ATTORNEY SHRAGER: You've talked about it with your girlfriend?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about your constitutional rights, sir?

THE DEFENDANT: No.

THE COURT: You understand your counsel's strategy to testify or not testify?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, sir.[35]

The testimony above demonstrates that Attorney Shrager did not interfere with the Defendant's right to testify as the Defendant underwent a lengthy colloquy which reviewed his right to testify and his decision, after consultation with his counsel, to not testify.

PCRA counsel nevertheless makes the argument that Attorney Shrager's advice to the Defendant was so unreasonable that he could not knowingly and intelligently waive his right to testify at trial. PCRA counsel relies on the case of *Commonwealth v. Nieves* to support this allegation. However, in the case of *Nieves*, the defendant wanted to testify and trial counsel admitted that he told the defendant to not testify because he could be impeached in his murder trial with his prior firearm and drug trafficking convictions. *Nieves*, 746 A.2d at 1104-1105. In the *Nieves* case, trial counsel essentially assured the defendant that he would be impeached by his prior criminal convictions. *Id.* The defendant's crimes in *Nieves* could not be used as impeachment evidence as the prior convictions were not for *crimen falsi*. *Id.* Thus, in *Nieves*,

---

[35] Trial Transcript, pg. 352 (December 10, 2013).

17

trial counsel's advice to the defendant about *crimen falsi* impeachment was erroneous, but convinced the defendant to not testify.

The *Nieves* case is distinguishable from the case at hand because trial counsel had to consider the possibility of the Defendant's prior bad acts becoming admissible as impeachment evidence or otherwise. In this case, the Defendant was on trial for sexual assault of a victim who was seven years younger than him. The Defendant was previously convicted of Indecent Assault of a minor child who was seven years younger than him and resulted in his Megan's Law registration. Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). It was reasonable for Attorney Shrager to be concerned that the Defendant could be subject to harmful cross examination based on this prior bad act and to advise him not to testify. The trial court submits that Attorney Shrager's advice was not erroneous and was not so unreasonable that the Defendant could not knowingly and intelligently waive his right to testify. Thus, this allegation fails for lack of arguable merit.

Additionally, PCRA counsel admits in the PCRA petition, "It is not beyond the realm of possibility that Defendant could have opened the door to prior bad acts through his testimony, but his simple act of testifying would not have done such."[36] As already noted above, Attorney Shrager had to be concerned with the Defendant's prior conviction being admitted as a prior bad act. However, even if it could not come in automatically, Attorney Shrager had to be concerned with the Defendant taking the stand and opening the door to the admission of his prior conviction

---

[36] PCRA petition, pg. 3 (Docket Entry 36).

18

which could have certainly impugned the Defendant in the eyes of the jury. This is another point which distinguishes this case from *Nieves*. In *Nieves*, the defendant was on trial for murder so it would have been extremely difficult for the defendant to open the door for the admission of his prior firearms and drug trafficking convictions. The trial court submits that the facts of this case would make it much more likely for the Defendant to open the door for the admission of his prior indecent assault conviction.[37] The following statement was made on the record by the Commonwealth:

> ASSISTANT DISTRICT ATTORNEY TRACI MCDONALD: We would indicate, for the record, that should there be character evidence that is introduced, that certainly, we are, in fact, going to raise the issue that he was listed as a Megan's Law offender and has other crimes in his background that involve crimes of a sexual nature. So absolutely.[38]

This statement was made in the presence of the Defendant so he was clearly made aware that the Commonwealth was going to attempt to admit his prior conviction at the slightest opening of the door by any character witness including the Defendant. It was reasonable for Attorney Shrager to advise the Defendant not to take the stand in order to protect him from that possibility.

PCRA counsel's request for a hearing on this matter indicated that the Defendant and the Defendant's mother, Susan Grove, would offer testimony that Attorney Shrager told the Defendant that he could not testify. The trial court submits that Attorney Shrager's untimely passing would make a hearing on the matter completely one-sided. The Defendant and his mother could offer any testimony to benefit the Defendant, but there could be no rebuttal from Attorney Shrager about the advice that he offered. The trial court submits that the matter is more

---

[37] *See Commonwealth v. Buxton*, No. 1384 WDA 2015, 2016 WL 832512 (March 2, 2016)("Counsel also stated that, if Appellant testified, 'the door could have easily been opened on' his prior convictions for resisting arrest and aggravated assaults on police officers.")

[38] Trial Transcript, pg. 348 (December 10, 2013).

19

appropriately resolved based upon the facts that are currently in the record. The record demonstrates that the Defendant acknowledged reviewing the strategy of not testifying with Attorney Shrager and that the Defendant agreed with that Strategy.

The second allegation made by PCRA counsel is that trial counsel was ineffective for failing to request a cautionary jury instruction regarding prior bad acts introduced against the Defendant. PCRA counsel asserts that a cautionary jury instruction was necessary to prevent the jury from considering the prior consistent statement read by the victim and the testimony of a witness about Defendant grabbing the buttocks of other women in the wrong light. Defendant's second allegation of ineffectiveness fails under the second prong of *Pierce* because trial counsel's decision to not request a cautionary jury instruction can be seen as reasonable trial strategy. The Superior Court of Pennsylvania addressed the admissibility of this evidence on Defendant's direct appeal, and the holding is tied to the claim raised by the Defendant presently. The Superior Court ruled as follows:

> This Court finds no abuse of discretion by the trial court. First, as the Commonwealth and the trial court stated, the evidence was not introduced to establish appellant's bad character in violation of Pa.R.E. 404. The Commonwealth offered the evidence to counter the argument that the sexual assault was consensual because appellant earlier had grabbed the victim's buttocks and that her failure to yell or fight when he confronted her at the Rugby House indicated that she was willing to engage in sexual activity with appellant. This evidence indicated that while appellant grabbed the victim's buttocks, he did the same to other people.
>
> Second, the Commonwealth did not need to provide notice of its intention to introduce this evidence because the Commonwealth only did so in response to the appellant's argument that the sexual activity was consensual. As the trial court stated, appellant opened the door to this evidence when he suggested that the victim was aware that appellant was targeting her by this action. Evidence that he grabbed the buttocks of other women refuted this contention. Third, this Court finds that the trial court did not abuse its

20

> discretion when it determined that the probative value of the
> evidence outweighed the prejudicial effect.

*Commonwealth v. Grove*, No. 1183 WDA 2014, 2015 WL 5377811, at 6 (Pa. Super. Ct. Aug. 12, 2016). Since admissibility can no longer be challenged by the Defendant, he is pursuing a claim that a cautionary jury instruction was necessary to protect against this evidence being considered in the wrong context by the jury. As can be reasoned from the Superior Court opinion, the Commonwealth introduced this evidence for rebuttal purposes and the evidence carried probative value that outweighed its prejudicial effect.

Based on the view of the Superior Court, that this evidence was more probative than prejudicial, it would be reasonable for Attorney Shrager to forego a request for a cautionary jury instruction in order to avoid drawing undue attention to the evidence. The Supreme Court of Pennsylvania ruled in a previous case regarding an allegation that trial counsel was ineffective for failing to request a cautionary jury instruction as follows:

> Appellant provides no factual support whatsoever for his bald
> assertion that the jury imputed prior unrelated criminal misconduct
> based on the references to his pre-trial incarceration, much less
> factual support which establishes by a "preponderance of the
> evidence" that the jury imputed such prior criminal misconduct.
> See 42 Pa.C.S. § 9543(a). In any event, trial counsel may
> reasonably decline to request a limiting instruction with regard to
> prior criminal misconduct where such an instruction might have
> served to emphasize what might otherwise have gone relatively
> unnoticed by the jury.

*Commonwealth v. Copenhefer*, 719 A.2d 242-253 (Pa. 1998). The trial court had determined that the probative value of this evidence outweighed the prejudice and allowed the jury to hear it. The evidence in question pertained to the Defendant grabbing the buttocks of women other than the Victim. It was reasonable for Attorney Shrager to avoid asking for a cautionary jury instruction in order to avoid drawing further attention to any "criminal" misconduct the

21

Defendant may have committed against women, other than the victim. This is a reasonable strategy designed to protect the Defendant from any further adverse inference that did not have to do with the victim. Attorney Shrager's untimely passing makes it impossible to obtain any testimony regarding his trial strategy, so the court must draw inferences from the trial record.[39] This court finds that Attorney Shrager pursued a reasonable trial strategy in the Defendant's interest. Therefore, the second allegation fails under the second prong of *Pierce*.

Based on all the aforementioned, the trial court submits that the Defendant has failed to demonstrate that he is entitled to relief on either of his Post Conviction Relief Act claims. Thus, the trial court submits that the Superior Court should affirm the dismissal of the Defendant's PCRA petition.

By the Court,

Date: 7/10/18

John F. DiSalle, J.

---

[39] *See Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010)(stating "it is particularly problematic to render an appellate finding of *per se* unreasonableness in a case where the PCRA judge, whose decision was under review, discerned a reasonable strategy from the trial record alone and, for good measure, the PCRA judge also presided at trial. At a minimum, these circumstances should at least have given the panel pause before rendering its *per se* finding.").

22